## Sampson's Appeal.

Under the Act of 29th March 1832, the Orphans' Court, on the return of the inquest of partition, may make at once a complete partition of the whole estate, by assigning a share to each of the parties in the order of choice prescribed by the 37th Section, if he will choose; and if not, by assigning a share not selected by any one, and ordering the payment of owelty or security for its payment to be given by those to whom shares subject to it shall be assigned.

APPEAL from the decree of the Orphans' Court of *Allegheny* county, made in respect to the partition of the real estate of Thomas Sampson deceased, late of Wilkins township, Allegheny county, who died intestate in August 1833, seised of two tracts of land situate in Wilkins township, Allegheny county; one containing 300 acres bounded by lands of William M'Crea and others; the other containing 150 acres, bounded by lands of John Duff and others. At the time of his death he left a widow, who died about two weeks afterwards, and seven children, viz. John, Thomas, William, who died in 1836, after having conveyed a part of his share and interest in the lands aforesaid to James Kelly, Mary, David, Margaret, intermarried with Stewart Thompson, and James, whose interest and share in the said estate was sold by the sheriff to James Kelly, before named. The Orphans' Court of Allegheny county, on the 25th of April 1839, upon the petition of John Sampson, the eldest son of the intestate, awarded a writ of partition or valuation directed to the sheriff of said county, commanding him, by means of an inquest of twelve men, to make partition of the lands and estate aforesaid, to and among those interested therein and entitled to the same, or to make a valuation thereof according to law. The sheriff accordingly, by an inquisition taken and dated on the 28th June 1839, reported a division of the lands into seven purparts or shares, but of unequal values.

The first purpart, containing 43 acres 144 perches, valued at......$5133.
The second "        "        52 "   12 "      "   "    "....... 5133.
The third   "        "        53 "    5 "      "   "    "....... 4918.
The fourth  "        "        68 "    7 "      "   "    "....... 4883.
The fifth   "        "       100 "    0 "      "   "    "....... 4126.
The sixth   "        "       111 "   31 "      "   "    "....... 5011.
The seventh "        "       103 "   85 "      "   "    "....... 5011.

On the 19th September 1839, the court, by consent of the parties interested, confirmed the division and valuation as reported in the inquisition. At the same time, all the parties being in court, John Sampson, the eldest son, elected to take the sixth purpart;

Thomas, the second son, elected to take the seventh purpart; James Kelly and Mary Sampson having become the assignees and owners of the share and interest of William Sampson, the third son of the intestate, declined making a joint election as assignees of William, as Mary Sampson was not willing to join Kelly in doing so. David Sampson, the fourth son, by his attorney in fact, declined taking any of the remaining purparts. James Kelly, vendee of the interest of James Sampson, the fifth son, elected to take the fifth purpart. Mary Sampson, the eldest daughter of the intestate, elected to take the second purpart; and Stewart Thompson and Margaret his wife, the youngest daughter of the intestate, elected to take the first purpart. But all the representatives of the intestate severally refused to take the third and fourth purparts, or either of them. Whereupon David Sampson, by his attorney, applied to the court to have them sold under an order made by the court for that purpose; but the court, conceiving it had no authority to make such order, refused to grant it, but decreed and ordered the purparts of the estate, elected to be taken, to those respectively who had elected to take the same, subject, however, to the payment of such sums as were necessary to equalize the value thereof, according to the appraisement made by the inquest and returned by the sheriff; the payment of which several sums the court directed to be secured by the parties respectively entering into a recognizance with bail for that purpose; which was accordingly done to the satisfaction of the court. From this decree of the court David Sampson appealed.

The appellant alleged that the Orphans' Court erred in ordering the purparts of the estate, elected to be taken, to those who elected to take the same, upon their entering into recognizances to pay such sums of money as were necessary to equalize them according to the appraisement made by the inquest and confirmed by the court, before the whole estate was taken or disposed of; and secondly, that the court erred in refusing to order a sale of the third and fourth purparts of the said estate, which no one or more of the representatives of the intestate were willing to take at their appraised value.

*Beaver*, for the appellant.
*M'Candless*, *Williams* and *Williamson*, for the appellees.

The opinion of the Court was delivered by

KENNEDY, J.—The partition made of the estate, in this case, by the sheriff and inquest, seems to be in conformity to the direction contained in the 38th Section of the Act of Assembly, passed the 29th March 1832, entitled "An Act relating to Orphans' Courts." *Pamph. Laws* 202; *Stroud's Purd.* (1841), *p.* 835. This enacts, that "when *equal* partition *in value* cannot be made by the seven men appointed as aforesaid or the said inquest, they shall make a

just appraisement of the respective purparts or shares, in which they may divide the estate, and thereupon the court may order the said purparts or shares successively to the persons entitled to make choice therefrom in the order and according to the rules enacted in the preceding section, where the estate cannot conveniently be divided; (that is, to the sons or males or their representatives first, and then to the daughters or females or their representatives, according to seniority in either sex); and they shall award that one or more purparts or shares shall be subject to the payment of such sum or sums of money as shall be necessary to equalize the value of the said purparts, according to said appraisement thereof; which sum or sums of money shall be paid or secured to be paid by the several persons accepting such purparts in the manner prescribed in the foregoing section." The 36th section, which is the first section authorizing the Orphans' Court to entertain applications for the partition of real estates, contemplates and provides for the partition or division of the estate, where it will admit of it without prejudice to or spoiling the whole of it, into as many purparts or shares, of equal value each, as there are children or representatives of the intestate; and as no preference is given by the terms of the section either on account of age or sex, in making choice of the shares, as they shall be set out and designated by the inquest, it would therefore seem as if the sheriff, or the sheriff and the inquest were to assign to each one his or her share, as in the case of a partition at common law; *Co. Litt. sects.* 248, 249; and that the court, in the language of the section, is merely to give judgment that the partition *thereby* made be firm and stable for ever, and that the costs thereof be paid by the parties concerned." But the following section, the 37th, which is the one referred to in the 38th, provides expressly for the case where the estate cannot be divided among those entitled to it; that is, where it will not admit of any division whatever, without prejudice to or spoiling the whole, and therefore directs that it shall be appraised; whereupon the court may order the same to the eldest son, &c., giving a preference to the sons or male representatives according to seniority; but if they all refuse to take the estate at such appraisement, then to the daughters or female representatives according to seniority, if any of them will take it. Then comes the 38th section, recited above, which embraces the present case, where the estate admits of division into as many shares as there are parties entitled to it, but not so as to make the shares of equal value, and therefore this section directs that the inquest shall appraise each share, so that the court, upon the return thereof, may equalize the several shares, by making those to whom they shall order the shares of more than the equal value, pay the excess in money to such as shall have assigned to them the shares appraised under the equal value. The 39th section then provides for the case where the estate cannot be divided into as many parts

as there are parties entitled to it, but will admit of being divided into two or more parts without prejudice to or spoiling the whole. The inquest are accordingly authorized, by this section, to make such division of the estate, and required to appraise each division, upon the return whereof the court may order the divisions or shares successively to the parties entitled to make choice therefrom in the order and according to the rules previously laid down, in the 37th section, for the case where the estate cannot conveniently be divided. Then follows the 40th section, which, taken in connection with the 42d section, the counsel for the appellant contends is applicable to this case, and that they go to show that the Orphans' Court erred in decreeing as they did, and in refusing to order a sale of the shares refused to be taken.

The 40th section declares that " in all cases of *appraisement* or *partition mentioned* in the preceding section (the 39th section) the Orphans' Court shall, on application, grant a rule on all persons interested, to come into court at a certain day, by them to be fixed, to accept or refuse the estate or a share or portion thereof, as the case may be; and in case the party entitled to a choice do not come into court in person or by guardian or attorney duly constituted, or in case he shall refuse the same, a record shall be made thereof, and the court may and shall direct the same to be offered to the next in succession, according to the rules hereinbefore provided." But according to the express terms of this section, it is confined to cases of *appraisement* or *partition mentioned* in the preceding section, (the 39th); and it is clear that the only cases *mentioned* therein are where the estate cannot be divided at all, or where it cannot be divided into as many parts or shares as there are persons entitled to it; which does not reach or apply to the present case. And it is perfectly clear that the 42d section, which authorizes and directs a sale to be made of the real estate, where the heirs neglect or refuse to take it at the appraisement, does not extend to the present case, nor to any other cases, at most, than the two cases where the estate cannot be divided at all or into as many shares as there are persons entitled to it. And this latter case, according to the terms, does not seem to be embraced in it; for it is the estate, which strictly means the whole of it, that is thereby directed to be sold, in case all the heirs, after due notice, shall neglect or refuse to take it at the valuation; and a purpart, share or portion of the estate is not even mentioned throughout the whole section; yet from the design of the Act as collected from other parts of it, where the same rules are made applicable to both cases, as for instance in making choice thereof by the heirs at the valuation, as well as the existence of the same necessity for a sale in both cases, it is difficult to come to any other conclusion than that the legislature intended to provide for a sale in both.

IV. — 12                    H*

Under this general view of the several sections of the Act relating to partition of real estates in the Orphans' Court, I should have no hesitation in coming to the conclusion that the legislature intended that the Orphans' Court, in such a case as the present, should order and decree such shares as were refused to be taken and accepted, to those who had refused, when their turn came to do so, to take any of the shares remaining untaken, and thus compel them, without further proceeding, to abide by the partition as made by the inquest. This would be doing no more, in effect, in such a case, than the sheriff and inquest have the power of doing in an action of partition at law, under the 5th section of the Act of Assembly of the 7th April 1807, (*Pamph. Laws* 157 ; *Purd. Dig.* 832), whereby it is enacted, " when an equal partition in value cannot be made of any share or purpart, that the sheriff and inquest shall have power to equalize such partition or purpart, by valuing the purparts respectively, and to award that any one or more shares or purparts shall be subject to the payment of such sum of money as shall be equal to the difference in value of any other share or shares, purpart or purparts, and shall return the same with their inquest; which sum or sums of money, when final judgment shall be rendered on such writ of partition, shall be a lien on the lands or tenements which the inquest aforesaid shall have determined to be liable to pay the same."

But the last clause of the 38th section presents at least a somewhat seeming obstacle to this conclusion, in directing that the sum or sums of money necessary to equalize the value of the said purparts according to the appraisement thereof by the inquest, " shall be paid or secured to be paid by the several persons *accepting* such purparts, in the manner prescribed in the foregoing section;" which is by giving good security by recognizance or otherwise to the satisfaction of the court for payment thereof, with legal interest, in some reasonable time, not exceeding twelve months, as the court may direct. This clause of the 38th section may be thought, by some, perhaps, to imply that there must first be a *voluntary* acceptance of the share charged with owelty, by the party, before he can be required by the court to pay it, or to give security for the payment thereof. Though this difficulty does not exist in this case, because all the shares charged with the difference in money necessary to produce equality of partition have been taken and accepted voluntarily by one or other of the parties interested, yet it is clear, if the Orphans' Court cannot compel a party to accept a share subject to the payment of owelty, where no other remains for him to choose, they cannot compel an acceptance of a share free from such charge. The court must be considered as either having the power given to them to decree and make a complete partition of the estate at once, upon the return of the inquest, and after notice of the time appointed for that pur-

pose to the parties interested, by assigning and ordering a share thereof to each of the parties concerned, notwithstanding some of them may refuse or neglect to elect and accept, or as only having the power to order a share thereof to such party as is willing to take the same; and if the latter were held to be the true construction of the Act, then it would seem to follow, almost of necessity, that the Orphans' Court ought to have ordered a sale of the shares refused to be taken in this case. But this would be attended with such inconvenience, if not injustice and delay, as could not well have been intended by the legislature; because it would, in effect, be putting it in the power of any one refusing or neglecting to choose a share, to set aside the appraisement made by the inquest, by calling for a sale of the same at any subsequent and indefinite period of time, when it might from various causes have become greatly deteriorated, and sell for a price greatly below the amount of the appraisement made by the inquest; and thus substitute the price of sale for the appraisement; which would, in such case, and doubtless in most cases, reduce the appraisement, and, at the same time, increase the owelty, which might have to be paid by others who had accepted of shares subject thereto. This, in many instances, would render it difficult, if not unsafe, for those entitled to the first choice, to take any of the shares, if the appraisement made by the inquest was not to be regarded and relied on as the rule by which it should be determined whether they would be entitled to receive or pay owelty, and the amount thereof, beside the impossibility of knowing within what time they would have to pay or be entitled to receive; for all these things could not be settled and known until all the shares were disposed of, either by being taken at the appraised value or sold under an order of the court made for that purpose.

I am, therefore, inclined to believe that the Legislature did not intend that a complete partition of the estate, in such case, should depend upon the *voluntary* acceptance of the shares by the parties interested, but that the Orphans' Court should have power, in every such case, upon the return of the inquest, in case no valid objection could be made to it, to make at once a complete partition of the whole estate, by assigning a share thereof to each one of the parties in the order of choice prescribed by the 37th section of the Act, if he will choose, and if not, then by assigning a share not selected by any one, and ordering the payment of owelty by those to whom shares subject to it shall be assigned, or that proper security shall be given by them respectively for that purpose. The order of the court, in this latter respect, as to the payment of the owelty, may be enforced by attachment. The only objection, therefore, which seems to exist to the decree of the Orphans' Court, is, that it did not give one of the shares, remaining untaken, to the appellant, David Sampson, and the other to

Mary Sampson and James Kelly, alienees of William Sampson, the third son of the intestate; but as the appellant has been the occasion of this omission on the part of the court, he cannot take advantage of it; nor has he any cause to complain on account thereof. The Orphans' Court, no doubt, will perfect the partition at any time in favour of these persons, upon their asking it.

Proceedings affirmed, and record remanded for further proceedings.