## DARRAH'S APPEAL.

In partition under the act of 1832, the inquest may divide the land into more pur-
parts than there are heirs; and such of the purparts as are not accepted may
be sold.

FROM the Orphans' Court of Bucks.

*March* 30. Petition for partition, there being six heirs. The
inquest divided the land into thirteen purparts; an exception was
filed, " that the inquest have divided the property into more pur-
parts than there are heirs." Upon this, the court set aside the
inquisition.

*Wright*, for appellant, referred to 4 W. & S. 86, and the act of
1845.

*April* 2. BELL, J.—In Sampson's Appeal, 4 W. & S. 86, it
was determined the Orphans' Court possessed no power, under the
act of 1832, to order a sale of a purpart of the land of a decedent,
when it had, under proceedings in partition, been divided into as
many shares as there were heirs, though the value of the several
purparts was unequal. This decision was based upon a somewhat
strict construction of the act, and was undoubtedly in contradiction
of what was the general understanding and practice throughout
the state. Being found to operate inconveniently, it produced the
act of 15th of April, 1845, by which the Orphans' Courts are, in
all cases, authorized to direct a sale of such portions of the real
estate of a decedent, as the parties in interest refused to accept at
the valuation thereof. This was but declaratory of the original
act, as its meaning was accepted and practised upon in many
sections of the commonwealth. Acting under this interpretation,
it was very common to divide the land descended, into as many
purparts as the interests of the heirs or the exigencies of the estate
called for, leaving it to the court, by adjudication and sale, finally
to adjust the rights of all having an interest in the subject. It very
seldom happens that the land can, without prejudice, be parted
amongst all the parties in interest: scarcely ever that it can be so
parted, with exact equality. Sometimes convenience and interest
dictate its valuation as a whole; sometimes its division into a fewer
number of shares than there are owners; and frequently it is
carved into many small lots, with a view to advantageous sale, the
process of partition being regarded rather as the means than the
end. To this practice my experience suggests no objection. It is

highly convenient in effecting a distribution of real estate, and, indeed, often the only mode of preventing the older from taking undue advantage of the younger heirs. Nor do we see anything prohibitory of this in the statute. It is true, the learned judge who delivered the opinion in Sampson's Appeal, seems to have thought that the 39th section of the act of 1832 contemplates only a division of the land into a less number of parts than there are parties entitled; and doubtless it was the intimation of this inclination, which led to the action of the Orphans' Court, in setting aside the inquisition in this instance. But the expression of this impression was not in the point of the case, and, therefore, does not attain the authority of a decision. The question is, then, still open, and although the precise language of the section, taken literally, would seem to justify the conclusion to which the observations of the judge point; yet, when considered in connexion with the whole scope of the act, the practice that has obtained under it, and subsequent explanatory legislation, we think the interests of the community will be best subserved, and the intention of the law-makers promoted, by giving to this remedial statute a liberal interpretation. The language is, "When such estate cannot conveniently be divided into as many shares as there are parties entitled," the inquest shall make a just appraisement of the parts or shares, into which they may divide the estate. The previous section looked to a division into shares equal to the number of heirs, and provided for the allotment of the purparts among the heirs. *This*, contemplates a partition into an unequal number of shares, and provides for a valuation. Why may not this be made to embrace as well an excess as a deficiency of shares, compared with the whole number of claimants? There is, certainly, nothing in the phraseology of the provision expressly prohibitory of such an extension of it, and we have failed to perceive anything in the spirit of the enactment that ought to restrain it. As experience has taught that the statute may with safety be liberally expounded in this particular, it is deemed best to give the widest scope to its action, consonant with the undoubted object of its makers, to facilitate the easy settlement of intestates' estates. We are, for these reasons, of opinion the Orphans' Court committed an error in setting aside the inquisition, which, in the view we have taken of the statute, is well enough.

It is hardly necessary to add, that even the reasoning in Sampson's Appeal, though founded on a narrower view of the act of

1832, to say nothing of the later act of 1845, will warrant the sale of such of the purparts as may not be accepted at the appraised value.

> Decree reversed, and it is ordered, that the record be remitted to the Orphans' Court, for further proceedings.