# Mason's Appeal.

*Partition of Real Estate.— Valuation and Right of Acceptance, how affected by Agreement of Heirs.*

After partition of the real estate of an intestate into three purparts by a jury of seven men, and the confirmation of their report, it was agreed, among the heirs, that the valuation of No. 3 should be reduced, with a corresponding reduction in owelty of partition, at which reduced valuation it was accepted by one of them.   Afterwards, on rule to accept or refuse the remaining purparts, the heirs of the eldest son W. elected to take No. 2 at the valuation, when the second son H. bid a higher price therefor, under objection from the heirs of W., who claimed it at the valuation under the agreement; the court below allotted it to H. the highest bidder, and No. 1 to the heirs of W., who did not refuse that purpart or ask that it should be sold. On appeal by them, it was *held*,

1. That the agreement of the heirs related only to purpart No. 3, and that it did not prevent the second son, if the highest bidder, from choosing the purpart on which he bid :

2. That as the heirs of W. did not at the time refuse to take the purpart allotted to them by the decree of the court, and ask that it should be sold, they could not in a court of appeal object that the purpart was forced upon them, and that it should have been ordered to be sold under Act of Assembly, April 13th 1835.

[Mason's Appeal.]

APPEAL from the Orphans' Court of *Allegheny county*.

This was an appeal by the heirs of Washington Mason, who was the eldest son of Archibald Mason, late of said county, deceased.

The case was this:—Archibald Mason died intestate in September 1859, seised of real estate in said county, leaving the following heirs, viz. :—

The children of Washington Mason, deceased, eldest son of said Archibald, said Washington having died in May 1858; Harrison Mason, the second son of said Archibald; and Mary, the youngest child, intermarried with William Dilworth, Jr.

On the 7th day of July 1860, the surviving son and daughter of the decedent, and the guardian of the minor children of Washington Mason, deceased, presented their petition in the Orphans' Court, for the appointment of seven persons named in the petition, who had been agreed upon by the said heirs to make partition and valuation of the real estate of the deceased; which was done.

On the 7th November 1860, the seven men selected by the heirs, and appointed by the court, made return of their proceedings, by which the real estate of the intestate was divided into three several parts:—No. 1 was valued at $9277.50; No. 2 at $9800; and No. 3 at $10,000.

This report was confirmed by the court on the 10th November 1860. On the same day, Harrison Mason presented his petition to the Orphans' Court for a rule on the heirs to appear in open court on the fourth Monday of December 1860, to accept or refuse the said real estate, at the valuation, or show cause why the same should not be sold, which was granted.

Subsequently some of the heirs became dissatisfied with the action of the jury, and refused to abide by it; and a new valuation was made by the heirs, reduced to writing, and signed on the 23d November 1860, as follows:—

" Whereas, the appraisement and valuation made by the jury of seven men, appointed by the court, in this estate, is not satisfactory to all the heirs of said deceased; and, whereas, purpart No. 3 was valued by the said inquest at the sum of ten thousand dollars; and, whereas, William Dilworth, Jr., and wife, have agreed to take the said purpart No. 3 at the sum of nine thousand five hundred ($9500) dollars, which is considered a just and fair valuation of the same:

" Now, it is hereby agreed by and between the parties hereto, that the valuation of purpart No. 3 aforesaid, shall be corrected by the court; and the valuation of said purpart No. 3 is hereby fixed upon and agreed to, at the sum of nine thousand five hundred dollars; and it is also agreed, that in order to equalize the

shares of the respective heirs, that purpart No. 2 shall pay to purpart No. 1 the sum of two hundred and forty-eight and 33-100 dollars ($248.33); and that said purpart No. 2 shall pay to purpart No. 3 the sum of twenty-five and 83-100 dollars.

" In testimony whereof, We have hereunto set our hands and seals this twenty-third day of November 1860.

|  |  |
|---|---|
| H. MASON, | [L. S.] |
| R. H. L. MASON, | [L. S.] |
| JOHN CREIGHTON, | [L. S.] |
| MARY M. DILWORTH, | [L. S.] |
| WM. DILWORTH, Jr. | [L. S.] |

Witnesses present:
  ANTHONY LEWIS,
  HENRY FLEAGY."

On the fourth Monday of December 1860, when the heirs appeared in open court, to make election, the guardian of the minor children of Washington Mason, deceased, made choice of purpart No. 2; whereupon Harrison Mason, the second son, appeared and objected, and presented his stipulation in writing, to take said purpart No. 2 at $700 over the value affixed by the inquest.

The further hearing of the case was then continued until the 29th day of December 1860, and so from day to day, until the —— day of January 1861, when the said Harrison Mason asked and obtained leave to increase his offer in writing heretofore made for purpart No. 2, from $10,500 to $11,300; and, thereupon, an offer in writing, of the price or sum of $11,300 for said purpart No. 2, was by him rendered and allowed to be filed. Objection was again made on behalf of the heirs of Washington Mason, who claimed to have allotted to them the said purpart No. 2 at the valuation.

The Orphans' Court on hearing adjudged purpart No. 1 to the heirs of Washington Mason at the valuation made by the jury, No. 2 to Harrison Mason at his bid, and No. 3 to Mary W. Dilworth, at the price fixed in the agreement above mentioned, directing Harrison Mason to pay the heirs of Washington Mason $748.33, and Mary Dilworth $525.83, within one year, with interest, to be secured by recognisance, &c.

The record was thereupon removed into this court by the guardian of the heirs of Washington Mason, for whom the following errors were assigned:—

1. The court erred in not decreeing purpart No. 2 to the heirs of Washington Mason, who had the first choice, upon their paying to purpart No. 1 the sum of $248.33, and to purpart No. 3 the sum of $25.83, as agreed by the heirs in the family arrange-

ment of the 23d day of November 1860; and in allowing Harrison Mason to overbid, after the heirs had fixed the valuation themselves.

2. The court erred in forcing purpart No. 1 upon the heirs of Washington Mason; purpart No. 1 should have been ordered to be sold by the administrators, as required by the Act of Assembly of the 13th of April 1845.

*A. H. Miller*, for appellants.—The error of the Orphans' Court was in losing sight of the fact that the valuation of the property on which their decree was based was a family settlement, made by the heirs, and not the appraisement of a jury. From the latter there is an appeal by bidding over, but the former, if fairly made, is binding as a contract on all the parties. Part of the agreement was affirmed by the court and part of it set aside. When the guardian of Washington Mason's heirs agreed that purpart No. 3 should be valued at $9500, instead of $10,000, as fixed by the jury, it was agreed by the others that purpart 2 was to pay certain owelty to purparts 1 and 3, and this with full knowledge of the fact that the appellants were entitled to the first choice. This agreement Harrison Mason now repudiates, which we trust will not be allowed.

2. The second error assigned requires no argument. The court below, in making the order complained of, supposed erroneously that Sampson's Appeal, 4 W. & S. 86, was still in force, when it is destroyed as a rule of law by the Act of April 15th 1845, Purd. Dig. 208, under which purpart No. 1 should have been sold by the administrators of Archibald Mason.

*John Barton*, for appellees.—1. Whether the Orphans' Court rightly construed the agreement of November 28th 1860, is the main if not the only question. The only effect which it had on the report of the jury was to reduce the valuation of No. 3 $500, and apportion the owelty accordingly, which the court of course permitted, and thereupon confirmed the report as amended by the heirs. No word is said therein as to who shall accept purparts one or two, but they were left open to the mode of choice fixed by the Act of Assembly of 1856, of which Harrison Mason availed himself, and thereby increased the shares of each of the other heirs $500.

2. Whether Sampson's Appeal is now the law or not, it could make no difference in this case, for there was no sale ordered, no loss, and no question of distribution before the court. The purparts were all accepted, as the record shows, and were so allotted. The only contested point was as to the right of Harrison Mason to bid over the valuation of Nos. 2 and 3, and this the court decided against the appellants.

[Mason's Appeal.]

The opinion of the court was delivered, November 7th 1861, by

READ, J.—By the 38th section of the Act of the 29th March 1832, it is enacted that where equal partition in value cannot be made by the seven men appointed as aforesaid, or the said inquest, they shall make a just appraisement of the respective purparts or shares, in which they may divide the estate, and thereupon the court may order the said purparts or shares, successively, to the persons entitled to make choice therefrom, in the order and according to the rules enacted in the preceding section, where the estate cannot be conveniently divided (that is, to the sons or males or their representatives first, and then to the daughters or females or their representatives, according to seniority in either sex); and they shall award that one or more purparts or shares shall be subject to the payment of such sum or sums of money as shall be necessary to equalize the value of the said purparts, according to said appraisement thereof, which sum or sums of money shall be paid or secured to be paid by the several persons accepting such purparts, in the manner prescribed in the foregoing section. The construction placed upon this section by the court in Sampson's Appeal, 4 W. & S. 86, which was strongly commented upon in Darrah's Appeal, 10 Barr 210, caused the Act of the 15th April 1845, which enacted that the court shall, upon the refusal of any of the heirs or parties interested to accept any part of the same, at the valuation thereof, or if after due notice they shall neglect to appear and accept the same, make a decree authorizing and requiring the executor or administrator, or other person, as the case may be, to expose such parts of the real estate, not accepted as aforesaid, to be sold agreeably to the provisions of the Act of Assembly passed the 29th March 1832.

A still further alteration was made by the 10th section of the Act of 22d April 1856, which enacted that in all cases of partition of real estate in any court, wherein any valuation shall have been made of the whole or parts thereof, the same shall be allotted to such one or more of the parties in interest, who shall, at the return of the rule to accept or refuse to take at the valuation, offer in writing the highest price therefor above the valuation returned, but if no higher offer be made for such real estate, or any part thereof, it shall be allotted or sold as provided by law.

In Dewart v. Purdy, 5 Casey 213, Justice Woodward pointed out what is really the distinction between the Acts of 1832 and 1856, that the former made privity of title the rule of allotment, the latter makes the highest price offered in writing above the valuation; but if there be no advance offered, the old rule prevails. In this case the heirs of the eldest son elected to take No. 2 at the valuation of $9800, whilst the second son offered in

writing the price or sum of $11,300, being the highest price therefor above the valuation. To this objection was made on behalf of the heirs of the eldest son, on the ground that they were entitled to take by an agreement of November 23d 1860. It was conceded that the second son was entitled to the choice, unless barred by this agreement signed by the parties, of which he was one.

It appeared that after the report of the jury of seven men was filed and confirmed, the valuation was not satisfactory to all the heirs of the deceased, Archibald Mason: this agreement was entered into, reciting: "Whereas purpart No. 3 was valued by said inquest at the sum of ten thousand dollars, and whereas William Dilworth, Jr., and wife have agreed to take said purpart No. 3 at the sum of nine thousand five hundred dollars, which is considered a just and fair valuation of the same."

Then it is agreed that this valuation of No. 3 shall be corrected by the court, and this valuation is fixed upon and agreed to: then follows an agreement to equalize the shares of the respective heirs, that No. 2 shall pay No. 1 $248.33, and No. 2 shall pay to No. 3 $25.83, but not one word as to the right of choice, or that the second son should not become the highest bidder.

All agreed that the valuation of No. 3 was too high, and impliedly conceded it to Mr. and Mrs. Dilworth, but there was no waiver by either of the heirs of the eldest son, or the second son. If the second son bid the highest he had the right of choosing the purpart upon which he bid. If he did not, then the choice of either part laid with the heirs of the eldest son.

This was the construction put upon the transaction by the court below, and we cannot say they were in error, and they accordingly allotted No. 1 to the heirs of the eldest son, No. 2 to the second son and highest bidder, and No. 3 to Mrs. Dilworth, and equalized the shares. To this decree there appears no such objection on the record as that the heirs of the eldest son refused to accept allotment No. 1, but on the contrary it would seem that they acquiesced in it. If they had intended to refuse, they should have refused and asked for a sale. It is too late, under the facts of the case, to raise this objection in a court of appeal.

The operation by which there was an advance of $1500 on No. 2, was for the benefit of all, and there is no equity in the claim to take it, by the heirs of the eldest son, at a sum below its intrinsic value.

Decree affirmed at the costs of the appellants.