## Appeal of Louisa Rankin.

1. Upon her death G. left surviving her a son, B., two daughters, R. and E., and the children of a deceased son, W. By her will she gave her residuary estate, embracing certain coal land and lots, to her two daughters, R. and E. The latter married S., and died after her mother, leaving a child, who died soon thereafter. S., the surviving husband, then petitioned the court to make partition of said coal land. The inquest made return dividing it into two purparts of equal value, which return was confirmed absolutely. After the rule to accept or refuse had issued, R. objected to the jurisdiction of the Orphans' Court, which overruled the objection. *Held*, that the court had jurisdiction.

2. S. was then permitted to bid under objection. *Held*, that as tenant for life he had no right to bid.

October 8th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the Orphans' Court of *Allegheny county :* Of October and November Term 1880, No. 185.

Margaret Giffin, widow, died April 9th 1872, leaving to survive her a son, Samuel Giffin, two daughters, Emily Giffin and Mrs. Louisa Rankin, and the children of a deceased son, William. She left a will which, inter alia, directed :—

"All that remains of my estate after paying the before-mentioned bequests, with the debts and charges, I give and bequeath to my daughters, Emily Giffin and Louisa Rankin (or their respective heirs), to be equally divided between them, share and share alike."

The remainder of the estate, after payment of debts, legacies, &c., consisted of about 63 acres of coal underlying a farm in Lower St. Clair township, devised to appellant, and about 114 lots of ground in the Thirty-second ward of the city of Pittsburgh.

Emily, shortly after the death of her mother, married E. P. Swift, and died August 13th 1873, intestate, leaving her husband and one child, which died shortly thereafter.

On June 7th 1879, E. P. Swift petitioned the court for the partition of said coal land and lots, and made parties thereto Mrs. Swift's collateral heirs. The return of the inquest divided the property

[Appeal of Louisa Rankin.]

into two purparts, " A " and " B," of equal value, $11,742, and the inquisition was confirmed April 10th 1880, and a rule issued to the heirs and parties interested to appear and show cause why they should not accept or refuse at the valuation. Before the return of this rule a petition was presented on behalf of Mrs. Rankin, asking that the whole proceedings be dismissed for want of jurisdiction. The court, Hawkins, P. J., after argument, held that the court had jurisdiction and dismissed her petition, in an opinion, saying :—

" The answer of Mrs. Rankin to the rule to accept or refuse questions the jurisdiction of this court in this proceeding in partition.

" If the solution of this question depended solely on a literal construction of the language of the 36th and 46th sections of the Act of March 29th 1832, Pamph. L. 201, jurisdiction might perhaps be somewhat doubtful. The 36th section provides for partition between the widow and lineal descendants of decedents, and the 46th for cases in which there are no lineal descendants, but collaterals and tenants for life. The act does not expressly provide for cases in which are both lineal descendants and collaterals But in ascertaining the jurisdiction of the Orphans' Court in partition, the purpose of the organization of that court, and the character and intent of the Act of 1832 and subsequent legislation must be taken into consideration.

" The main purpose of the establishment of the Orphans' Court, aside from the control of minors and their estates, was to provide a tribunal for the settlement of the estates of decedents. An essential part of that settlement is the distribution of both real and personal estate. It is well settled that it has exclusive jurisdiction in the distribution of personal estate. If the division and distribution of the real estate be essential to settlement it would follow that the Orphans' Court has jurisdiction to divide and distribute. The construction of the various Acts of Assembly relating to partition of real estate in the Orphans'. Court must therefore be liberal.

" The sections of the Act of 29th March 1832 (sections 36 to 46 inclusive) relating to partition were simply a consolidation and arrangement of the various acts previously in force on that subject. Hood on Ex'rs. 489 (Remarks of Com. under section 36). In Young v. Bickel, 1 S. & R. 460, which was decided prior to the passage of the Act of 1832, Judge YEATES expressed the opinion that the laws then in force provided for every case which could occur in the disposition of the estates of intestates. Judge HUSTON took the same view in Seider v. Seider, 5 Whart. 321, and said that the doubt of Judge TILGHMAN, in Young v. Bickel, supra, ' was confined to the case where only tenants for life were before the court, and whether a partition between them ought to bind those in remainder.' In the case of Walton v. Wills, 1 Dallas 351,

where substantially the same facts existed as here, no doubt was suggested by the distinguished counsel who, as McKean, C. J., said, had 'done great justice of the case,' nor by the court that the Orphans' Court had jurisdiction. It was there held that a tenant by the curtesy must be made a party and provided for in the decree. In Waln's Appeal, 4 Barr 502, Gibson, C. J., in commenting on the 4th section of the Act of 13th April, 1840, which extended the jurisdiction of the Orphans' Court in partition to cases of testacy wherein the parties interested, or any of them, are minors, or the course of descent is not altered by the provisions of the last will and testament of the decedent, said : 'But jurisdiction had previously been given to the Orphans' Court in cases of intestacy generally ; and a doubt, for which there was no solid foundation, had prevailed, but which it was the purpose of the second clause (of the 4th section of the Act of 13th April, 1840) to remove, whether parties could proceed in the Orphans' Court for the partition of descended land in cases of partial intestacy. The clause was unnecessary. * * *

" It appears from the foregoing that the 36th and 46th sections of the Act of 1832 were intended to operate as well where there were lineal descendants and collaterals interested jointly as where there were lineal descendants, or collaterals alone, interested, in real estate proposed to be parted. They constituted part of a system for the settlement of the estates of intestates.

" The 4th section of the Act of 13th April 1840, Pamph. L. 320, and the 1st section of the Act of 26th February 1869, Pamph. L. 4, extended and rounded the jurisdiction of the Orphans' Court in partition. The former provided, inter alia, for all cases of testacy wherein the parties interested, or any of them, are minors, or descent was not altered by the last will, and the latter that 'several undivided interests in any premises derived from different ancestors by descent or devise, may be parted in one proceeding in the Orphans' Court.' It is expressed in the former act and implied in the latter that the 'same proceeding shall be had thereon as in cases of intestacy.' It was said in Seider v. Seider, *supra*, that the several acts relating to partition in the Orphans' Court must be construed as though embraced in the same act. Taken together, these acts give jurisdiction to the Orphans' Court in cases (1) intestacy, (2) testacy, wherein there may be minors interested, or the provisions of the will do not alter the course of descent, and (3) in cases where title is derived from different ancestors by descent or devise ; and they cover every possible aspect in which the present case can be presented. If this proceeding be regarded as a partition of the estate of Margaret Giffin, deceased, it is a ' case of testacy wherein ' some of the ' parties interested ' are minors, and therefore the court has jurisdiction ; if partition of an estate derived in part from Mrs. Giffin

[Appeal of Louisa Rankin.]

by devise and in part from Mrs. Swift by descent, still the court has jurisdiction.  In what degree of relationship the 'parties interested' may stand to the ancestor, or what the quality of the estate they may have, can obviously make no difference as respects jurisdiction.  The jurisdiction having once attached will be made effectual for the purpose of complete relief:" Shollenberger's Appeal, 9 Harris 337."

On the return of the rule to accept or refuse, the questions were raised whether E. P. Swift, tenant for life and petitioner had a right to bid over the valuation, and the remainder-men having refused to accept at the valuation, the tenant for life had no choice. The court, Hawkins, P. J., held that the life-tenant and remainder-men, as well as Mrs. Rankin, had the right to compete in bidding, and ordered the parties to proceed to the selection of purparts, in an opinion, saying:—

"It was manifestly the intention of the proviso to the 46th section of the Act of 29th March 1832, Pamph. L. 201, to give remainder-men priority of choice over tenants for life.  The exercise of the 'right to accept or refuse the premises,' and the duty of payment of the annual interest 'on the valuation,' are inconsistent with priority or equality of choice on the part of the tenant for life.

"But it is also manifest, that if, without the proviso, the tenant for life would have had a right of choice, the proviso did not take away entirely but simply postponed it.  'Such remainder-men * * * shall have the right.' * * * Would the tenant for life have had such right?  By the terms of the act, of which this proviso forms a part, the rule to accept or refuse is directed to be served on 'all persons interested, to come into court at a certain day * * * to accept or refuse the estate.'  The purpose of partition being to sever possession, tenants for life in possession must necessarily be made parties to the proceeding, and are therefore persons interested, upon whom the rule is directed to be served.  Why service without the right to accept or refuse ?  If the remainder-men refuse, who, if not the tenant for life in possession, shall be entitled to take ? He certainly cannot be deprived of his estate without an equivalent, and no equivalent is provided.  No one else is interested in his continued possession than the remainder-man, and he voluntarily, by refusing to accept the premises, in effect, consents.  That the premises in the present case are mines, opened in the lifetime of Mrs. Swift, and that Mr. Swift, as tenant for life, is entitled to work and exhaust them : Lynn's Appeal, 7 Casey 44 ; Williard v. Williard, 6 P. F. Smith 119, are circumstances which seem to strengthen his right of election.

"The 10th section of the Act of 22d April 1856, Pamph. L. 534, not only impliedly recognises a right of choice in the tenant for life, but affords him an opportunity of retaining possession even

as against the remainder-men. It provides that the premises 'shall be allotted to such one or more of the parties in interest who shall, at the return of the rule to accept or refuse to take at the valuation, offer in writing the highest price therefor above the valuation returned.' The purpose of this act being to equalize the valuations, who is more interested in that purpose than the tenant for life? If he be bound by the partition and without the right to be heard, his estate may be sacrificed and he be without remedy.

"The several acts relating to partition in the Orphans' Court constitute one system, and must, as a matter of course, be construed together: Seider *v.* Seider, 5 Whart. 221.

"It is certainly an inconvenience that the remainder is open for further partition after the tenant for life dies; but so it is in all cases where the interests of the tenants are different in the time of their duration: Poundstone *v.* Everly, 7 Casey 11."

Mrs. Rankin bid $5 and Mr. Swift $5000 over the valuation of purpart "A," and said purpart was accordingly allotted to Swift. There was no contest over purpart "B," which was allotted to Mrs. Rankin on her bid of $1 over the valuation. Mrs. Rankin then filed a protest against the whole proceeding, and took this appeal, alleging:—

1. The court erred in holding that the Orphans' Court had jurisdiction in partition on petition of a life-tenant where there were lineal descendants.

2. In granting to the life-tenant of a moiety, the right to compete with lineal descendants for the right of choice, and in making an allotment of purpart "A" to the life-tenant against the protest of Mrs. Rankin, a lineal descendant, as well as one of the remainder-men.

*Bruce & Negley,* for appellant.—If a life-tenant is entitled to partition, it cannot be through the Orphans' Court. At common law, coparceners only who held unities of interests, title and possession could have compulsory partition: 2 Bl. Com. 187.

And so one coparcener might maintain a writ against an alienee of another, or against a tenant by the courtesy, yet neither the one nor the other of these could maintain such writ against a coparcener; but by the acts 31 Hen. 8, c. 1, and 32 Hen. 8, c. 32, the benefit of the action was extended to an alienee of a parcener, and to joint tenants and tenants in common seised of an estate of inheritance against tenants for life or years. Yet they do not give the writ to tenants for life or years. Therefore a tenant by the curtesy cannot maintain an action for partition: Rob. Dig. 217–224; Co. on Litt. 175; Brightly's T. & H., sects. 1810–1814. A tenant by curtesy, although he cannot commence, must be made a party in the proceedings for partition in order that he may, if he chooses, be present, and by evidence or argument induce the inquest to put a

[Appeal of Louisa Rankin.]

higher estimate or value upon the premises : Walton *v.* Willis, 1 Dall. 376.  This in order that if he be dispossessed of the possession of the land, he may be remunerated with the interest of its full value.  The Orphans' Court being a court of limited jurisdiction, must be governed entirely by the acts in relation to partition : Young and Wife *v.* Brickell, 1 S. & R. 467.  The Acts of 29th March 1832, Pamph. L. 201, Purd. Dig. 433, and of April 13th 1840, sect. 4, Pamph. L. 320, Purd. Dig. 433, limit the right of action first to the widow and lineal descendants, and second, if there be no lineal descendants or widow, to collaterals in whom the estate shall vest in possession.  Lineals and collaterals cannot be united in the same proceeding.

" The allotments of the purparts (if the inquest do not make partition and division to and among the widow and lineal descendants, but make and return a just appraisement thereof to the Orphans' Court) can only be made to lineal descendants (excluding the widow) in the order given in section 37 of Act 28th March 1832, Purd. 435, sect. 148, viz. : to sons first,· in the order of their age, and second, to the daughter, in the order of their age, and the only exception made thereto is the alienee of one of such parties : Ragan's Estate, 7 Whart. 438 ; Thompson *v.* Stitt, 6 Barr 156 ; Kline *v.* Grayson, 4 Binn. 225 ; Sampson's Appeal, 4 W. & S. 91 ; Stewart's Appeal, 6 Barr 241 ; Bishop's Appeal, 7 W. & S. 251 ; Painter *v.* Henderson, 7 Barr 48 : Gieler's Estate, 1 Pearson 445.  The whole course of legislation looks to the life-tenant receiving interest in money from those who take the land, rather than the land itself.  This court decided in Painter *v.* Henderson, 7 Barr 50, that the widow was not an heir to whom the land could be awarded, nor can she be called upon to make an election.  Is not this decision equally applicable to a husband a tenant by curtesy ?  Thus the law stood prior to the Act of 1856, and we contend the 10th section of that act effects no change.

*J. C. McComb* and *Hampton & Dalzell,* for appellee.—The several undivided interests were derived from different ancestors by descent and devise.  Moreover, some of the parties interested were minors.  In such case the Orphans' Court had jurisdiction : Act of April 13th 1840, sect. 4, Pamph. L. 320 ; Act of February 25th 1869, sect. 1, Pamph. L. 4.  The cases cited by the appellant do not throw any doubt upon the jurisdiction of the court.

The objection to the jurisdiction in this case seems to turn upon the fact that the petition was by the life-tenant.  It cannot be doubted that if the proceedings had been initiated by Mrs. Rankin, or the guardian of the minors, the jurisdiction of the Orphans' Court would have been beyond any question.  When respondents acquiesced in this proceeding, the case was in all respects exactly as it would have been had they been the petitioners in the first

instance.   The court had before it all parties in interest.   It was conducting a proceeding by the authority of the persons who had a right to invoke its process to the end sought.   As is said by the Supreme Court of the United States in Railway Company *v.* Ramsey, 22 Wall. 327, "consent of parties cannot give the courts of the United States jurisdiction, but the parties may admit the existence of facts which show jurisdiction, and the court may act judicially on such an admission."

The purpose of partition being to sever possession a tenant for life entitled to possession in common is a party interested.   He had a right of choice at common law : Ragan's Estate, 7 Watts 438, which was not taken away by the 46th section of the Act of 1832, but was simply postponed to the remainder-men.   The Act of 1856 provides for allotment to " parties interested " who shall bid over the valuation, and necessarily embraces tenants for life.   There is no resemblance between the cases of a widow and tenant by the curtesy.   The one is not entitled ordinarily to possession, and the other is.

Mr. Justice 'PAXSON delivered the opinion of the court, November 8th 1880.

The first assignment alleges the Orphans' Court erred in holding that it had jurisdiction in partition on petition of a life-tenant where there were lineal descendants.  There is nothing in the language of any Act of Assembly that in express terms gives a life-tenant, other than the widow, the right to have partition in the Orphans' Court.   Without discussing this branch of the case, much less deciding it, we regard it as clear that the court had jurisdiction over the subject-matter.   We need not refer in detail to the different Acts of Assembly upon this subject.   It is sufficient to say, briefly, that they confer jurisdiction upon the Orphans' Court to make partition in 1. Cases of intestacy.   2. Cases of testacy wherein minors are interested, or the provisions of the will do not alter the course of descent, and 3. Cases where title is derived from different ancestors by descent or devise.   It is very clear that under the foregoing the Orphans' Court would have had jurisdiction, had the appellant, Mrs. Rankin, been the party petitioning.   In such case the appellee, who is a life-tenant, would have been a necessary party to the proceedings.   The court would then have had jurisdiction over both the parties and the subject-matter.   The objection of the appellant has reference merely to the order in which the parties are brought into court.   We infer from the record that this point was not raised in the court below until after the confirmation of the inquisition, and a rule issued to the heirs and parties interested to accept or refuse the premises at the valuation.   She then filed her petition asking to have the proceedings set aside for want of jurisdiction.   Her objection should have

been made at an earlier day. It is true, as a general principle, that objection to the jurisdiction may be made at any stage of the proceedings. But we do not think the rule applies where the court has jurisdiction over the subject-matter, and the objection, if valid, has reference only to the order in which the parties are brought into court.

The second assignment presents a more serious question. It alleges "the court erred in granting to the life-tenant of a moiety the right to compete with the lineal descendants for the right of choice, and in making an allotment of purpart 'A,' to the life-tenant against the protest of Mrs. Rankin, a lineal descendant, as well as one of the remainder-men."

The allotment of purparts in the Orphans' Court upon proceedings in partition is not an auction where any one can come in and bid. The 37th section of the Act of 29th of March 1832, Pamph. L. 201, designates the persons who may take at the valuation where the property cannot be divided, and the order in which they may elect, as follows : 1. To the eldest son, if he be living; but if he be dead, to his children, if any, in the order of their birth, and preferring males to females ; and in like manner to his other lineal descendants in the same order. 2. If the eldest son, or his lineal descendants, do not accept the same, then to the second and other sons, or their lineal descendants, successively in the order of birth, in the like manner as is provided for the eldest son and his descendants. 3. If the second or other sons, or their descendants, do not accept the same as aforesaid, then to the eldest daughter and her lineal descendants, in like manner as is provided in the case of the eldest sons. 4. If the eldest daughter, or her lineal descendants, do not accept the same, then to the second and other daughters, or their lineal descendants successively, in like manner as is provided for the second and other sons.

The foregoing applies to cases where there are lineal descendants. The 46th section of the same act refers to cases where there are no lineal descendants, and provides that, "the like proceedings shall be had in all respects, on the application of the persons in whom the estate shall vest in possession : Provided, that if there be a life estate or life estates with remainders over, such remainder-men shall be made parties to the proceedings in partition, and shall have the right to accept or refuse the premises at any valuation, * * * in the same manner as the lineal descendants of a decedent."

By this section, as will be seen, the life-tenant is not permitted to make choice as against even remainder-men.

I am unable to find in any of the subsequent Acts of Assembly extending the jurisdiction and enlarging the powers of the Orphans' Court, a recognition of the right of a life-tenant to bid against a lineal descendant for a purpart in partition. The tenth section of the Act of 22d April 1856, Pamph. L. 534, confers no such right.

While said section applies to all cases of partition, and provides that where there is a valuation " the same shall be allotted to such one or more of the parties in interest who shall at the return of the rule to accept or refuse to take at the valuation, offer·in writing the highest price therefor above the valuation returned," yet it is apparent it does not change the law as to who may come in and bid. It was not intended to enlarge the circle of bidders. The ·" parties in interest" referred to in the act are the persons who would have had the right to come in and elect to take prior to its passage. The section changes the mode of electing, perhaps its order, but not the persons.

It was decided in Painter *v.* Henderson, 7 Barr 48, that the widow, although entitled to have partition upon her application, was not a party to whom a purpart could be awarded. The reason given was, that the Act of Assembly did not make her such a party, and the omission to do so was intentional. The persons entitled to take are the heirs. Among the recognised exceptions are, 1. The husband may accept in right of his wife where she ·is an heir: Johnson *v.* Matson, 1 Barr 171; Stoolfoos *v.* Jenkins, 8 S. & R. 175; Keen *v.* Ridgway, 16 Id. 60; Thompson *v.* Stitt, 6 P. F. Smith 156; and 2. The alienee of an heir: Sampson's Appeal, 4 W. & S. 86; Thompson *v.* Simpson, 3 Barr 71; Painter *v.* Henderson, *supra;* Thompson *v.* Stitt, *supra.* The appellee here has a life estate in two different rights; in the one as tenant by the curtesy, and the other as heir of .his deceased child. It does not add to his estate, however, that he holds it in two rights. He is but a life-tenant.

Our Acts of Assembly in relation to partition in the Orphans' Court, though passed at different times, in reality constitute one system, and must be construed together. They are ample for the protection of a life-tenant, but I am unable to see in any portion of this legislation even an intent that such tenant may come in and compete with heirs for the property. Nor is it necessary for the preservation of his rights. The object of partition is a severance of possession. The life-tenant is a necessary party to the proceedings. It is the duty of the inquest to set off to the widow her share by metes and bounds, if it can be done: Bishop's Appeal, 7 W. & S. 251. By analogy the same rule may be extended to other tenants for life. It is true this leaves the remainder open to further partition at the death of the tenant for life, but this is an inconvenience that arises where the interests of the tenants are different in the time of their duration: Poundstone *v.* Everly, 7 Casey 11. If the property cannot be so parted and divided that the share of the tenant for life can be set off to him, the law requires that it shall be valued, and it may then be taken by the heirs in the manner before pointed out. The heirs taking the property are of course obliged to pay the tenant for life interest upon

[Appeal of Louisa Rankin.]

his share. This is specifically provided for in the Act of Assembly in the case of a widow. By analogy the interest of other life-tenants can be secured in the same manner. We are of opinion that our entire system of partition in the Orphans' Court contemplates that where the share of a life-tenant cannot be set off to him by metes and bounds, he shall have the interest upon its value instead.

The life-tenant being a necessary party to the proceeding, is entitled to come in and except to the valuation fixed by the inquest. He is directly interested in such valuation; the more so that he cannot protect himself by competing with the heirs for the purparts. In all cases where there is a life-tenant great care should be taken to have a fair and correct valuation. This is not always done for the reason that the heirs can protect themselves by bidding. In the case in hand the appellee bid for purpart A. $5000 over the valuation. This is some evidence of an undervaluation. It may not amount to much in view of the fact that the bid came from the life-tenant, yet we think it entitled to some weight, and as the proceedings in the court below were based upon the mistaken supposition that the life-tenant had a right to bid, we will, in reversing the decree, open the confirmation of the inquisition. This will give the appellee the right to come in and except to the valuation if he thinks it too low, and in our judgment reach the substantial justice of the case.

> The decree, with all proceedings subsequent to the return of the inquisition, is reversed and set aside at the cost of the appellee.