# Wistar's Appeal.

105    390
41SC 1 86

1. In proceedings for partition, in the Orphans' Court, it is the primary duty of the commissioners to divide the land into as many purparts, of equal value, as there are heirs, if that be practicable. In such case the commissioners may allot one purpart to each heir, without appraising either the land as a whole or the several purparts.

2. Acts of Assembly relating to partition in the Orphans' Court, considered.

3. Where a petition and writ for partition contained a statement that a portion of the land was in possession of an adverse claimant which, however, was found to be a mistake, and said portion was included with

the rest in the partition actually made, without objection by any of the parties, such erroneous statement may be stricken out of the petition and writ, by amendment, even after the removal of the record upon appeal to the Supreme Court.

February 19, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Lycoming county*. In Partition: Of January Term, 1884, No. 239.

This proceeding in partition was commenced by the filing of a petition by James M. Gillilan and Sarah W. Gillilan his wife, in her right, Alexander E. Harvey and Rachel L. Harvey his wife, in her right, and Lewis A. Scott and Fanny W. Scott his wife, in her right, setting forth that Richard Wistar, late of the city of Philadelphia, died November 3, 1862, intestate, and a widower, leaving to survive him as his sole heirs at law five children, to wit, the said three petitioners, Sarah W. Gillilan, Rachel L. Harvey and Fanny W. Scott, and two sons, Richard Wistar and William Lewis Wistar. That said Richard Wistar died seised, inter alia, of four certain tracts of land situate in Lycoming county, particularly described by metes and bounds. The petitioners prayed that an inquest be awarded to make partition of the said real estate among the aforesaid parties according to their respective rights.

A rule to show cause having been granted upon the said Richard Wistar and William Lewis Wistar, they appeared, and by paper filed it was agreed by all the said parties in interest, petitioners and respondents, that John S. Laird, Evan Starr and W. H. Warn be nominated as commissioners to divide and value said real estate to and among said parties with the same effect as a sheriff's inquisition for the same purpose; this nomination was approved by the court.

Thereupon a writ of partition was issued authorizing and directing said commissioners "to go to the premises aforesaid, and in the presence of the parties or their legal representatives, they having been severally warned, if upon being warned they will be present, having respect to the true value thereof, that they inquire whether the real estate aforesaid can be conveniently parted and divided, so as to accommodate all the children and legal representatives of said deceased without prejudice to or spoiling the whole; and if they can, that then they part and divide the same among said children and legal representatives of said decedent. But if such partition cannot be made as aforesaid, that they then inquire," etc., etc.

The said commissioners afterwards filed their report, setting forth that after due notice, etc., they proceeded to view the real estate described in said order of court, and having due respect to the value thereof, found that the same could be

equally parted and divided among the children and heirs of said Richard Wistar, deceased, without prejudice to or spoiling the whole, and have accordingly parted the same into five parts, which are of equal value, and have divided them among the said children and heirs, as follows, viz:

Purpart No. 1. Bounded and described, etc., . . . . . Which said piece, parcel or lot of land, with the improvements, we have divided and allotted to Sarah W. Gillilan, wife of James M. Gillilan, and one of the children and heirs of said Richard Wistar, deceased.

And setting forth similarly as to each of the other four purparts, one thereof being divided and allotted to each of the other parties in interest, viz: Purpart No. 2 to Rachel L. Harvey; Purpart No. 3 to Fanny W. Scott; Purpart No. 4 to William Lewis Wistar, and Purpart No. 5 to Richard Wistar.

The commissioners further reported that they had caused the said purparts so parted, divided and allotted to be surveyed, and the lines separating them to be marked on the ground, and they attached to their report a draft or plot showing how they had parted, divided and allotted said lands into purparts of equal value.

To this report Richard Wistar and William Lewis Wistar filed the following exceptions:

1. Because the commissioners have not valued the real estate in said writ of partition described, as a whole.

2. Because the commissioners have fixed no value upon any of the purparts into which they have divided said real estate.

3. Because the commissioners have allotted the five purparts into which they have divided the said real estate to the five different heirs of Richard Wistar by name.

. 4. Because the Act of Assembly authorizing the Orphans' Court to issue writs of partition does not allow the commissioners to divide the real estate into purparts and arbitrarily allot them to different heirs.

The court filed the following opinion, dismissing the exceptions:

" The primary duty of an inquest or commission in partition in the Orphans' Court is to divide the real estate into as many purparts of equal value as there are heirs or persons entitled thereto, and make allotment of the same. For many obvious reasons it rarely occurs that this can be done, and hence the existence of such power and practice is obscure. A careful examination of the statutes on the subject, considering the purpose to be effected, and the rules of the common law which preceded the statutes, is convincing that such power and practice does exist. In the case before us the real estate to be divided is unseated land, valuable, mainly as timber land,

and as it was practicable so it became the duty of the commissioners, under their oaths, to divide the land into so many parts of equal value as there were persons entitled to share therein.

"It is only when '*equal partition in value*' cannot be made that the provisions of the law for returning a value for the whole or for each part becomes necessary.

"For these reasons, and because there is not even an allegation of inequality, unfairness or injustice in these proceedings, all the exceptions are dismissed at the cost of the exceptants."

A final decree was entered confirming the report of the commissioners, and adjudging that said partition and allotments be and remain firm and stable forever.

The exceptants, Richard Wistar and William Lewis Wistar, thereupon took this appeal. A certiorari issued from the Supreme Court on January 12, 1884.

The petition as filed, in setting out the description of one of said tracts contained the following clause: "Reserving and excepting therefrom about twenty acres, known as the 'Barber Improvement,' which your petitioners are informed is now being cultivated by one ———— Gray. This reservation is made without admitting title or right of possession in said Gray or any one else, except the heirs of the said Richard Wistar, deceased, to said 'Barber's Improvement,' or any part thereof, but the same is reserved out of abundance of caution."

It afterwards appeared that said Gray occupied said twenty acres under lease from the heirs of the intestate, and said lot was, at the request of the parties, included in the partition by the commissioners.

The court below, after the record had been removed to the supreme court, made the following order:

And now, February 7, 1884, on reading and filing of affidavits of John S. Laird, W. H. Warn and Evan P. Starr, the commissioners in the above matter, and of Joseph A. Gilmore, L. E. Schuyler and Franklin Gray, and it appearing to the court that the title to that portion of the Leonard Leshart tract, known as the "Barber Improvement," containing twenty acres, more or less, is in the heirs of said Richard Wistar, deceased, and not in Franklin Gray, and that said land was included in the report of the commissioners at the request of D. B. Dykins, agent and attorney in fact for Richard Wistar and William Lewis Wistar, and that no injustice will be done the said Richard Wistar and William Lewis Wistar by the amendments asked for: On motion of attorneys for the petitioners, to which exceptions are filed by exceptants, after hearing, it is ordered that the petition filed May 7, 1883, and the writ or order issued to the commis-

sioners, be amended by striking therefrom the words contained in the description of the Leonard Leshart tract as follows [being the clause above cited].

Richard Wistar and William Lewis Wistar excepted to the amendment for the following reasons:

1. Because it appears, by the affidavits filed, that the counsel for the petitioners were aware of the mistake made in the petition and writ by the insertion of the "Gray reservation" as early as September 19, 1883, and the application should then have been made for the amendment.

2. Because an appeal was taken from the final decree in this estate upon January 9, 1884.

3. Because the paper book of the appellants has already been printed and served.

Objections overruled; exception.

The appellants filed a number of assignments of error, the material ones being to the overruling of their exceptions to the commissioner's report, as above set forth; to the final decree in partition; to the action of the court in permitting the petition to be amended after appeal taken, and because the petition, as originally filed, contained a statement of adverse possession in another of a portion of the real estate to be parted, and in such case a partition cannot be made.

*Henry Johnson* and *Henry C. Parsons* for the appellants.

*C. La Rue Munson* (with him *John M. Scott* and *Addison Candor*) for the appellees.

Mr. Justice STERRETT delivered the opinion of the court, October, 6, 1884.

One of the questions involved in this contention is whether the commissioners nominated by the children and heirs at law of a decedent, and appointed by the Orphans' Court to make partition of the real estate of which their father died seised, after having divided the land into as many purparts of equal value as there are heirs, have the power to allot to each child respectively, by name, one of said purparts. The learned president of the Orphans' Court held they had, and in this he was clearly right.

The provisions of the Act, March 29, 1832, revising and consolidating previous enactments relative to partition in the Orphans' Court, and the course of practice thereunder for more than half a century, ought to be sufficient to preclude any doubt as to the power in question. The thirty-sixth section of the Act empowers the Orphans' Court of the county where the real estate of a decedent is situate, " on application of

the widow or any lineal descendant having an interest in such real estate, etc., to appoint seven or more disinterested persons, chosen on behalf and with the consent of the parties, or, when the parties cannot so agree, to award an inquest to make partition of the real estate of such decedent, and, upon the return made by the persons so appointed, or of the inquisition taken, to give judgment that the partition thereby made be firm and stable for ever, and that the costs thereof be paid by the parties concerned;" Purd., 433, pl. 136. The Act of 1855 provides that "on the agreement and nomination of the parties the court may appoint three or more commissioners to divide or value the real estate with the same effect as a sheriff's inquisition;" Purd., 1116, pl. 22. It is very evident the commissioners, whose appointment is thus provided for, are a substitute for the inquest, and hence it follows that their duties are substantially the same. The words "inquest" and "sheriff's inquisition," employed in these Acts, are borrowed from the common law, and hence the functions of "an inquest," composed of the sheriff and a jury, must be ascertained by reference to common law proceedings in partition. After the interlocutory judgment, *quod partitio fiat inter partes*, etc., was pronounced, the writ of execution, *de partitione facienda*, issued of course to the sheriff, commanding him to make partition of the premises by the oaths of twelve good and lawful men, to assign the parts in severalty, etc., and to make report to the court under his seal and the seals of the jurors. Then, upon the return of the inquest thus executed, followed the final judgment that the partition so made be and remain firm and stable for ever: 1 Thomas' Coke Litt., 699, et seq.; 2 Minor's Inst., 416.

The object of partition is severance of the joint possession, and accordingly the Act of 1832 primarily provides for an equal division of the estate among the parties entitled thereto, and then for the several contingencies that may arise in case that is impracticable. One of these is where the estate cannot be parted: that is, where it will not admit of any division whatever without prejudice to or spoiling the whole. Another is where the estate admits of division into as many purparts as there are parties, but not so as to make the shares of equal value; and the third is, where it cannot be divided into as many shares as there are parties, but may be advantageously divided into two or more purparts. In each of these contingencies the 37th, 38th and 39th sections of the Act respectively provide for an appraisement by the inquest, and for allotment of purparts, adjustment of owelty, etc., by the court. But the 36th section, contemplating an actual and equal division among all the parties entitled, makes no pro-

vision for appraisement of the purparts, or of the whole estate, nor for the allotment of the purparts by the court. Doubtless the reason of this is, that where the joint possession can be severed, without prejudice, by giving to each party a portion of the estate corresponding in value with his interest therein, the necessity for an appraisement does not exist, and actual partition can be so far effected by the inquest or commissioners as to require nothing more than the final judgment or confirmation of the court under whose supervision the proceedings are conducted. As is said by Mr. Justice KENNEDY, in Sampson's Appeal, 4 W. & S., 86, the 36th section contemplates and provides for the partition and division of the estate, where it will admit of it without prejudice to or spoiling the whole, into as many purparts or shares of equal value as there are children or representatives of the intestate; and as there is no preference given by the terms of this section, either on account of age or sex, in making choice of the shares as they shall be set out and designated by the inquest, it would therefore seem as if the sheriff or the sheriff and the inquest were to assign to each one his or her share, as in the case of partition at common law, and that the court is merely "to give judgment that the partition thereby made be firm and stable forever," etc. Such, we think, has been the generally accepted construction of the Act; and, so far as we are aware, the practice in the Orphans' Courts has been in accordance therewith. In a recent and well considered opinion, supported by the authorities therein cited, the learned president of the Orphans' Court, fifth judicial district, recognizes the authority of commissioners in partition to allot in such cases, as being in accordance with well established practice: Giffen's Estate, 30 Pg. Leg. Jour., 60.

The construction we have given to the Act of 1832 is not affected by subsequent legislation, so far as the question under consideration is concerned. The supplement of April 11, 1835, Purd. 1116, pl. 21, empowering the sheriff and inquest "to divide the property into such number of purparts as shall appear to them most convenient and advantageous, without regard to the number of parties in interest and to the value of each purpart," does not modify the 36th section of the former Act. It is still the primary duty of the commissioners to divide the land into as many parts, of equal value, as there are heirs; and, in this case, they found that such a division was entirely practicable. The Act of May 5, 1841, P. L., 353, is not applicable to partition in the Orphans' Court. In express terms it relates to "cases of partition in the Common Pleas." Nor does the Act of April 22, 1856, Purd., 1116, pl. 24, affect the question under consideration.

[Hower *v.* Wallis.]

It provides "that in all cases of partition of real estate, in any court, where a valuation shall have been made of the whole, or parts thereof, the same shall be allotted to such one or more of the parties in interest as shall, at the return of the rule to accept or refuse to take at the valuation, offer in writing the highest price therefor above the valuation returned," &c.   This pre-supposes an appraisement or valuation; but, as we have seen, when an equal division among all the parties is practicable, a valuation is neither necessary nor required by the Act.   By its express terms, the section above quoted is applicable only to cases where an appraisement or valuation has been made and returned.

The amendment of the petition and writ was clearly in the power of the court, and under the circumstances disclosed by the testimony it was rightly allowed.   No injustice was done the appellants thereby, and they have no just reason to complain.

Some of the specifications of error suggest questions that were not properly raised in the court below, and for that reason are not entitled to be considered here; but, waiving all that, we find nothing in any of them that would justify a reversal of the decree.

> Decree affirmed and appeal dismissed at the costs of the appellants.