## Sanders's Estate.

*Partition—Orphans' court—Jurisdiction—Tenant by curtesy.*

1. The orphans' court has jurisdiction to entertain a petition for partition filed by the husband of the deceased daughter of a decedent as tenant by the curtesy of his wife's undivided interest in the estate of the decedent.

*Decedents' estates—Tenant by curtesy—Husband and wife—Possession.*

2. A surviving husband is entitled to curtesy of land of his deceased wife of which he had only a potential seizin during her life. Actual possession by the wife, or by the husband, in her right is not necessary. If she had possession by a tenant for years, or if she had a right to the present possession, it is sufficient. The effect is equivalent to that of actual seizin.

*Partition—Denial of title—Adverse possession—Evidence—Tenant by the curtesy.*

3. The denial of the tenancy in common by an heir of the decedent on the return of the writ of partition, with an assertion of title in himself by adverse possession, will not be sufficient to require a suspension of the proceeding, but the court may hear evidence upon the claim asserted and if it be insufficient to justify submission to a jury, may confirm the inquest and proceed with the partition.

4. A husband's right as tenant by the curtesy in an undivided interest of his deceased wife in the land of a decedent, is not defeated by a claim of adverse possession by mere proof of the reception of profits and the payment of taxes by the co-tenants for over twenty-one years prior to the time of the filing of a petition in partition by the husband.

5. While a life tenant has no right in the orphans' court to elect, or to come in and bid upon return of a rule to accept or refuse, yet he has such interest as entitles him to all the incidental advantages that may accrue from an allotment by a court after competition between the parties entitled to bid, or a sale, and therefore has equal right with the other parties to object to an allotment by the inquest if that is unauthorized.

6. The power of an inquest in partition to allot is gone when they divide the land into a number of purparts of unequal value and appraise them.

7. Where an inquest divides land into a number of purparts of unequal value and appraises and allots them, the inquisition will be set aside as a whole, unless the parties elect to let it stand as a whole.

Argued April 19, 1909. Appeal, No. 45, April T., 1909, by James J. Purman et al., from decree of O. C. Greene Co., Sept. T., 1905, No. 2, in partition in Estate of Elizabeth Sanders, deceased. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY and HEAD, JJ. Reversed.

Petition for partition. Before INGHRAM, P. J.
The facts appear by the opinion of the Superior Court.

*Error assigned* was decree setting aside the allotment of the purparts, but otherwise confirming the inquest.

*James J. Purman*, with him *Frank W. Downey*, for appellants.—The orphans' court has no power to set aside an allotment of lands as made by an inquest in partition and otherwise confirm the inquest. The court must confirm the inquest as a whole or set it aside: Bishop's App., 7 W. & S. 251; Giffin's Est., 13 P. L. J. (N. S.) 60; Rankin's App., 95 Pa. 358; Wistar's App., 105 Pa. 390.

Equal value, shares of equal value, and the like expressions in the law and decisions, simply mean this: that if the lands can. be so divided, without prejudice to or spoiling the whole, each person interested is to be allotted a portion in severalty equal in value to his interest in the whole: Wistar's Est., 14 W. N. C. 45; Massacer's Est., 4 Kulp, 13; Trickett on Partition, 93–94; Rankin's App., 95 Pa. 358.

The plea of adverse possession is a complete answer to the petition for partition, until petitioner vindicates or establishes his title to right of possession by an action of law: Staib v. Hayes, 123 Pa. 110.

Elizabeth Sanders died intestate leaving five children; Emma, a daughter, subsequently died intestate and without

issue, never having been in possession; all the heirs conveyed to strangers who were in exclusive possession. The surviving husband of Emma, claiming a life estate in her share, cannot have partition of the whole: Cooke v. Doron, 215 Pa. 393; Rankin's App., 95 Pa. 358; Giffin's Est., 30 P. L. J. 60.

The orphans' court acquires no jurisdiction of this estate on this petition: Rankin's App., 95 Pa. 358; Snyder's App., 36 Pa. 166; McMasters v. Negley, 152 Pa. 303.

*A. H. Sayers*, for appellee.—In what degree of relationship the parties interested may stand to the ancestor, or what the quality of the estate they may have, can obviously make no difference as respects jurisdiction. The jurisdiction having once been attached will be effectual for complete relief: Schollenberger's App., 21 Pa. 337; Bishop's App., 7 W. & S. 251; Holmes v. Fulton, 193 Pa. 270; Himelspark's Est., 8 Pa. Dist. Rep. 183.

In Pennsylvania a surviving husband is entitled to curtesy of land of his deceased wife, although she has no actual possession, but only a potential seisin during her life. If she had possession by a tenant for years, or only the right to present possession, it is sufficient: Buchanan v. Duncan, 40 Pa. 82; Stoolfoss v. Jenkins, 8 S. & R. 167; Welch's App., 126 Pa. 297.

It is adverse possession which will defeat the partition and not simply an adverse claim: Wistar's App., 115 Pa. 241.

The court had jurisdiction on the evidence before it, to pass upon respondent's claim to an adverse possession: Cobb v. Burns, 61 Pa. 278; Davis's Est., 9 W. N. C. 380.

The sheriff and jury in partition, after dividing the land into purparts and placing a valuation on the same, have power to allot the several purparts to the heirs nominatim: Wistar's App., 105 Pa. 390; Bishop's App., 7 W. & S. 251.

OPINION BY RICE, P. J., October 11, 1909:

Elizabeth Sanders died intestate, seized of land, and leaving to survive her five children, one of whom was a married daughter who subsequently died intestate, without issue, and leaving her husband to survive her. After her death he filed a

petition for partition, to which, in response to a rule to show cause, the respondents filed an answer denying the jurisdiction of the orphans' court. To this answer the petitioner filed a replication and upon consideration of the pleadings and the evidence submitted upon depositions the court overruled the objection and awarded a writ of partition.

The first question to be considered is, whether the orphans' court had jurisdiction to award partition of the land of the decedent, Elizabeth Sanders, on the petition of the husband, tenant by the curtesy, of her deceased daughter. That the orphans' court has jurisdiction to partition the land of a decedent so situated as to the title, and that the husband of the deceased daughter, by reason of his life estate in an undivided one-fifth part, is a necessary party to the proceeding we regard as clearly decided in Rankin's Appeal, 95 Pa. 358. In that case Hawkins, P. J., of the orphans' court upon an elaborate review of the statutes in force, and the decisions under them as well as under earlier statutes of similar general import, reached the conclusion, which was reiterated by the Supreme Court on appeal, that these statutes are to be liberally construed, and that taken together they give jurisdiction to the orphans' court in cases: first, of intestacy; second, of testacy, wherein there may be minors interested, or the provisions of the will do not alter the course of descent; third, where title is derived from different ancestors by descent or devise. In discussing the rights of the life tenant Justice Paxson said: "Our acts of assembly in relation to partition in the orphans' court, though passed at different times, in reality constitute one system, and must be construed together. They are ample for the protection of a life tenant, but I am unable to see in any portion of this legislation even an intent that such tenant may come in and compete with heirs for the property. Nor is it necessary for the preservation of his rights. The object of partition is a severance of possession. The life tenant is a necessary party to the proceedings. It is the duty of the inquest to set off to the widow her share by metes and bounds, if it can be done: Bishop's Appeal, 7 W. & S. 251. By analogy the same rule may be extended to other tenants for life. It is true this leaves the remainder

open to further partition at the death of the tenant for life, but this is an inconvenience that arises where the interests of the tenants are different in the time of their duration: Poundstone v. Everly, 31 Pa. 11. If the property cannot be so parted and divided that the share of the tenant for life can be set off to him, the law requires that it shall be valued, and it may then be taken by the heirs in the manner before pointed out. The heirs taking the property are of course obliged to pay the tenant for life interest upon his share. This is specifically provided for in the act of assembly in the case of a widow. By analogy the interest of other life-tenants can be secured in the same manner. We are of opinion that our entire system of partition in the orphans' court contemplates that where the share of a life tenant cannot be set off to him by metes and bounds, he shall have the interest upon its value instead." Notwithstanding this clear and authoritative exposition of the law relative to the jurisdiction of the orphans' court and to the rights and standing the life tenant would have had in such a case as we have stated, if the partition proceeding had been instituted upon the petition of a child or the alienee of a child of Elizabeth Sanders, it is urged that the law gave him no right to petition for the partition. The question presented by this objection was raised in the case cited, but not until after the inquisition had been confirmed and a rule had been granted on the heirs and parties interested to accept or refuse the premises at the valuation. The Supreme Court, expressly declining to decide or discuss the question, held that the objection did not go to the jurisdiction of the orphans' court over the subject-matter, but only to the order in which the parties were brought into court, and came too late. Here the question was raised at the outset of the proceeding and must be decided. If its solution depended solely on a literal construction of the language of the 36th and 46th sections of the Act of March 29, 1832, P. L. 190, the right of the life tenant to petition might seem doubtful. But that has not been the construction that has been generally followed. Several instances are found in the reports where the right to petition, though not founded on the strict letter of the statutes, has been held to result from their true design, and has been recognized in practice. A

leading case is Ragan's Est., 7 Watts, 438, the doctrine of which has been followed in several later cases and applied to proceedings instituted upon the petition of the alienee of an heir, the alienee of a devisee, and the alienee of an appointee under a power in a will: Stewart's Appeal, 56 Pa. 241; Rawle's Appeal, 119 Pa. 100.  The subject was also considered in Thompson v. Stitt, 56 Pa. 156; Cote's Appeal, 79 Pa. 235; Danhouse's Estate, 130 Pa. 256.  If, therefore, the petition had been filed by an alienee of the daughter of Elizabeth Sanders the jurisdiction of the orphans' court to entertain it would be sustained by these decisions.  By applying the same liberality of construction, in order to carry out the true design of the statutes, the jurisdiction of the orphans' court to entertain the petition of her husband, tenant by the curtesy, may be sustained.  This conclusion seems to be in accordance with the view that was taken by the orphans' court of Allegheny county in Rankin's Appeal, supra, and the orphans' court of Philadelphia county in Himelspark's Estate, 8 Pa. Dist. Rep. 183.  We are of opinion that it is the correct view.

A statement of some additional facts is necessary in order to give a correct understanding of the question which arises out of the allegation of the respondents' answer as to their exclusive and adverse title and possession.  It is alleged in the petition and not denied in the answer that in 1901, after the death of Emma, the petitioner's wife, the respondents, by four several conveyances, the dates and tenor of which are fully set forth, acquired the title and interest of the four other children; and it is alleged in the answer and not denied in the replication that since that time they have paid all the taxes on the property, they having been assessed in their names, and have received the entire rents, issues and profits.  Neither the petitioner nor his deceased wife was ever in the actual occupancy of the premises after the death of Elizabeth Sanders.  While the respondents deny the petitioner's title, and assert their exclusive title and possession in very vigorous terms, they do not assert any right or title adverse to Elizabeth Sanders or any right or title derived otherwise than as above stated.  As was proper in view of some of the allegations of the answer, the court received

depositions to determine the questions raised by the petition, answer and replication: Trickett's Law of Partition in Pa. 47. In these every fact denied in the answer, which was essential to the petitioner's title and right of possession, was clearly proved, and no evidence whatever was introduced by the respondents which raised even a dispute of fact regarding them. As to the effect to be given to the fact that neither the petitioner nor his deceased wife was ever in the actual occupancy of the premises after the death of Elizabeth Sanders, it will suffice to say, that in Pennsylvania a surviving husband is entitled to curtesy of land of his deceased wife of which he had only a potential seizin during her life. Actual possession by the wife or by the husband in her right is not necessary. If she had possession by a tenant for years, or if she had a right to present possession, it is sufficient. The effect is equivalent to that of actual seizin: Buchanan v. Duncan, 40 Pa. 82; Stoolfoos v. Jenkins, 8 S. & R. 167, 175; Chew v. Southwark, 5 Rawle, 160. In connection with the facts as to the reception of the rents, issues and profits and the payment of taxes, there should be considered the averments of the replication, not controverted by any evidence, that the "title and right of possession of petitioner to said property has never before to his knowledge been denied either by the respondents or by any other person, but on the contrary the respondents have . . . . offered to purchase the same," and that his share of the income of the estate, for which the respondents have not accounted to him, was more than enough to pay his proportionate share of the taxes. While it has been said that an adverse holding of property by the defendant twenty-one days before the bringing of an action of partition at law is as effectual to defeat the plaintiff as an adverse holding for twenty-one years would be, Law v. Patterson, 1 W. & S. 184, yet it has also been held with reference to partitions in equity and in the orphans' court that the court is not concluded by the respondent's claim but has power to receive and look into testimony far enough to determine whether the claim of adverse and exclusive title and possession, in which is necessarily involved a claim that the respondent's cotenants have been ousted or disseized, has any foundation in fact. One of the points ex-

pressly decided in Welch's Appeal, 126 Pa. 297, upon careful consideration and thorough discussion, is correctly stated in the syllabus as follows: "The denial of the tenancy in common by an heir of the decedent on the return of the writ of partition, with an assertion of title in himself by adverse possession, will not be sufficient to require a suspension of the proceeding, but the court may hear evidence upon the claim asserted and if it be insufficient to justify submission to a jury, may confirm the inquest and proceed with the partition." This ruling was followed and applied in McMahon's Estate, 211 Pa. 292, and in Carey v. Schaller, 16 Pa. Superior Ct. 350, and the principle of the case was distinctly recognized in McCorkle's Estate, 184 Pa. 626. Upon the same principle it was the province and duty of the court in the present case to go beyond the denial of the petitioner's title and seizin and the assertion of the respondents' exclusive title and possession set up in their answer, and, if these were refuted by the undisputed facts, to award the inquest. We have spoken sufficiently of the title and there remains only to consider the sufficiency of the acts of the respondents to raise a legal presumption or warrant an inference of ouster or disseizin. Lapse of time enters into the question of inferring an ouster and adverse possession from such acts. This is shown in Galbreath v. Galbreath, 5 Watts, 146, which was partition, as well as in Bolton v. Hamilton, 2 W. & S. 294; Susquehanna & Wyoming Valley Railroad & Coal Co. v. Quick, 61 Pa. 328, and many other cases. In the recent case of Rohrbach v. Sanders, 212 Pa. 636, Justice FELL speaking of the effect of such acts, in the absence of exclusive possession for twenty-one years, said: "The possession of one tenant in common is prima facie the possession of his cotenant also, and the mere reception of profits, payment of taxes, and making repairs without more will not sustain a claim of ouster or adverse possession: Bolton v. Hamilton, 2 W. & S. 294." Whatever might be the presumption that would arise from these acts of the respondents, if they had continued uninterruptedly for twenty-one years, without any recognition in the meantime of the petitioner's title, it is quite clear, particularly when considered in connection with the undenied facts averred in the replication, that the reception

of the profits and the payment of taxes up to the time this petition was presented would not have been sufficient to raise such natural or legal presumption of ouster as would have defeated the partition, if Emma Good had been living at that time and the petition had been presented by her: Galbreath v. Galbreath, 5 Watts, 146; Carey v. Schaller, 16 Pa. Superior Ct. 350. They are equally ineffectual to defeat the petition of her surviving husband.

The next question to be considered is as to the power of the inquest to allot the purparts into which they divided the land. The case is peculiar and not exactly like any other that has come to our notice. It appears by the return of the inquest, that they found that the property could be divided and parted without prejudice to or spoiling the whole; that they divided it into five purparts, numbered one, two, three, four and five, which were fully described; that they valued number one at $250, and the four other purparts together, at $1,000; that they allotted number one, "being the equal one-fifth part of said premises in both area and value," to the petitioner for life, with remainder to the respondents, and the four other purparts, "being the equal four-fifths part of the premises in both area and value," to the respondents. It appears by the draft attached to and made part of their return that the five purparts are respectively of the same area, and were valued as follows: number one, $250, number two, $175, number three, $175, number four $200, number five, $450. The petitioner excepted to the return upon the ground that the sheriff and jurors had no authority to allot the purparts. The court sustained the exception and set aside the allotment, but otherwise confirmed the return of the inquest. It is argued in opposition to this exception, upon the assumption that the petitioner is to be treated as one party and the two respondents jointly as the other party, that there was allotted to each a portion of the land corresponding both in area and value with that party's interest in the estate, and therefore the petitioner has no right to complain. While it is true that a life tenant has no right, in the orphans' court, to elect, or to come in and bid upon return of a rule to accept or refuse (Rankin's Appeal, 95 Pa. 358) yet he has such

interest as entitles him to all the incidental advantages that may accrue from an allotment by the court after competition between the parties entitled to bid, or a sale, and therefore has equal right with the other parties to object to an allotment by the inquest if that is unauthorized. If the case is one where it is the province and duty of the inquest to allot the purparts, and they do allot them, it is the duty of the court, if the inquisition be not set aside, "to give judgment that the partition thereby made be firm and stable forever, and that the costs be paid by the parties concerned." Where the inquest or commissioners divide the land into as many purparts, of equal value, as there are parties entitled, they may allot one purpart to each, without appraising either the land as a whole or the several purparts: Wistar's Appeal, 105 Pa. 390. But where the number of purparts into which they divide the land will not permit an equal division according to interest by setting off one purpart to each person entitled to take in severalty, the act of 1832 provides for an appraisement of the purparts by the inquest, and transfers the power of allotment to the court. Furthermore, such being the kind of case in which an appraisement is required, the Act of April 22, 1856, P. L. 532, applies: Whitman v. O'Connor, 145 Pa. 642. Therefore, while impressed with the plausibility of the argument of appellant's counsel, we are constrained to concur with the learned judge of the orphans' court in holding that the power of the inquest to allot was gone when they divided the land into five purparts of unequal value, and appraised them: Davis v. Dickson, 92 Pa. 365.

The last question to be considered is as to the power of the court to strike off the allotment and confirm the inquisition otherwise. There may be cases where the court would be justified in striking out of the return irrelevant matter as surplusage, but a striking out of that which may have affected the judgment of the inquest in other matters, and then confirming the inquisition as amended is quite a different thing. In Christy's Appeal, 110 Pa. 538, it was said that if the return is, as such, defective in leaving uncertain what the inquest did, or what they intended to be understood as done, the court ought, even without exceptions of parties, to set it aside. For the same

reason the court ought not to confirm an inquisition after striking out a material part of it without being certain that as thus altered it presents the judgment of the inquest. The power to determine whether the land can be divided without prejudice to or spoiling the whole, and if so the number of purparts into which it may be most advantageously divided is in the inquest. It is by no means certain that in this case they would have made the same division if they had not supposed they had the power to allot the purparts as they did. We therefore conclude upon this point that the inquisition should be set aside as a whole, unless the parties elect to let it stand as a whole, which they may deem it advisable to do rather than to submit to the expense and delay incident to another inquisition.

The decree setting aside the allotment and confirming the inquisition otherwise is reversed, and the record is remitted to the orphans' court with directions to set aside the inquisition as a whole and to award an alias inquest to make partition, unless within thirty days from the date of this decree the parties shall elect in writing to have the inquisition as returned confirmed as a whole, in which event the court shall confirm the inquisition, and give judgment that the partition thereby made be firm and stable forever, and that the costs thereof be paid by the parties concerned in proportion to their several interests. It is further ordered that the costs of this appeal be paid by the appellee.