## DANA v. JACKSON.

The operation of the act of the 5th of May, 1841, providing, "that in all cases of partition in the Common Pleas, the court shall allow the holders of the titles to the land or parts thereof, to take the same or parts thereof, consecutively, according to the dates of their respective titles, legal or equitable," &c., is not confined to cases in which the estate will not admit of division into as many parts as there are parties to the action.

The act applies to all cases of partition in the Court of Common Pleas, and was intended to transfer from the sheriff to the court the right and power of assigning the estate or purparts to, or amongst, the parties according to a prescribed rule.

It seems that the only case in which it is left to the discretion of the court to assign the estates or purparts, among the several parties electing to take the same, is that in which the titles of the parties so electing may be of the same date.

In error to the Common Pleas of Wyoming county.

*July* 13. This was an action of partition, brought by Asa S. Dana, the plaintiff in error, against John Jackson. The material facts of the case, as stated by his honour, Judge COULTER, who delivered the opinion of this court, and as they appeared by the paper book, are the following :

Dana, the plaintiff, brought his action of partition against Jackson, in which judgment was rendered in his favour for *two-thirds* of the premises, and in favour of Jackson, the defendant, for the *other third*. A writ *de partitione facienda* was then issued to the sheriff, who returned to the court, that he summoned an inquest and made partition of the premises into *two parts ;* and that one part, containing two-thirds of the whole, which the inquest valued at the sum of $3952, he had allotted, assigned, and delivered to Asa S. Dana, the plaintiff, as his share; and that the inquest valued the other third at the sum of $2093, which he alloted, assigned, and delivered to John Jackson, the defendant, as his share. And, also, that the inquest, in order to equalize the shares, awarded, that the last part which was allotted should be subject to the payment of $83 by the said Jackson to the said Dana. Exceptions were filed by Dana, against the confirmation of the inquisition and the sheriff's return, on the ground, *that the sheriff and inquest had no power or authority to allot and assign to the parties*. The court below, (JESSUP, P. J.,) overruled the exception, and confirmed the inquisition and return of the sheriff. Dana, thereupon, sued out this writ of error, and assigned as error the exception made in the court below.

*H. B. Wright,* for plaintiff in error. The single question presented by the record is, whether the sheriff and jury of inquest have the power, under the law, to assign the purparts.—At common

law, the matter is plain; but since the act of 5th May, 1841, the authority which the sheriff and jury possessed at common law has gone. That act provides, that *in all* cases in the Common Pleas, the parties shall be allowed the right of choice under the terms therein contained.

The act of 11th April, 1799, sec. 2, (Purdon Dig., p. 830,) provides for the case where the land cannot be divided without prejudice to, or spoiling the whole, that it shall be valued and returned, &c. The act of 7th April, 1807, sec. 5, (Purdon Dig., 833,) gives the jury power to *equalize*. Both these statutes change the course of the common law; but till the passage of the act of 5th May, 1841, the inquest still had the power to assign the purparts to the parties. That act, however, is conclusive, and must rule this case; Wetherill *v.* Keim, 1 Watts, 320.

*Little* and *H. Wright*, contrà.—The legislature, in passing the act of May 5, 1841, intended to provide a remedy for some defect that existed in our system of partition in the Common Pleas, prior to its passage. By the act of 1799, no rule was furnished by which the court should be governed in disposing of the choice, where more than one of the parties was willing to take at the appraised value. Here was a defect that needed a remedy; and this remedy is afforded by the act of 1841. So that now he is entitled to priority of choice, who has priority of title. The act of 1841 requires no appraisement. There can, of course, be no election where there is no appraisement; and the absence of this requirement in the act of 1841, shows clearly to what class of cases it was intended to apply; to wit, to those cases in which the inquest were required to make and return to the court an appraisement of the land, or purparts thereof, by the act of 1799; which was only where they could *not* divide according to the command of the writ, without prejudice, &c.; Dunlop, 164; Miller on Partition, 140, 162, 163.

*July* 20. Coulter, J., (after stating the case.) The plaintiff alleges that the act of 5th May, 1841, governs the case. The act is in these words: "That in all cases of partition in the Common Pleas, the court shall allow the holders of the titles to the lands, or parts thereof, to take the same or parts thereof consecutively, according to the dates of their respective titles, legal or equitable, and shall on application grant a rule on all persons concerned to come into court, on a certain day by them to be fixed, to accept or refuse the estate or a portion thereof, as the case may be; and if the party entitled to a choice do not come into court, or by guar-

dian or attorney, or in case he, she, or they shall refuse the same, a record thereof shall be made, and the court may and shall direct an offer thereof to be made to the next in succession, according to the rule above described; and so much of any act of Assembly as is inconsistent with this is hereby repealed." The court below gave a construction, so clipt and constrained, to this act, as to exclude the present case from its beneficial tendency, and confine it to cases,—to use the words of the court,—"where the parties would be in court for the purpose of choosing purparts, and in which no rule as to preference among them, where more than one elected to take the same share, had been prescribed." The court states that the act of 11th April, 1799, prescribes no rule by which the court shall be governed in assigning the appraised land to either of the parties. So that the whole effect of the act, according to that construction, would be, to take from the court a discretion on this subject in a small number of cases,—those only where there was no division, but an appraisement of the whole,—and substitute the rule of the elder title. But this construction, besides being totally inadmissible on other grounds hereafter to be noticed, is against the express words of the act, which provides, that the parties shall *take the same or parts thereof*, and that the party shall accept or refuse the estate or a portion thereof, as the case may be. Thus evidently including cases where there was no division, but an appraisement, as well as those cases where a division had been made. And what good reason exists for confining the operation to cases under the act of 1799, or under the act of 1835, where the division had been made, but not into as many parts as there were parties? If it is good in the last case, why is it not good and suitable where the division is into as many parts as there are parties? especially as the act expressly says, that the provision shall extend to all cases of partition in the Common Pleas. But the court below was of opinion, that by extending the act, as far as its words plainly and clearly import; every thing valuable,—to use their own words,—in our laws relating to partitions, would be overturned. Now the only effect which the law can have, by giving full scope and meaning to its words and its spirit,—in other words, in applying it to all cases of partition in the Common Pleas,—is to take from the sheriff his common-law derivative right of assigning and allotting the several purparts to the several parties, according to his arbitrary will and pleasure, and vesting that right in the several courts of the commonwealth having jurisdiction, according to a prescribed rule. Thus assimilating the proceeding to the rule and practice in the

Orphans' Court in cases of intestacy: in the one case, assigning according to the seniority of title successively; and in the other case, according to the seniority of age and preference of sex, consecutively. In partition in the common-law courts, the rule prescribed in the statute fails only where the titles are all of the same date; and in that category, the discretion of the court furnishes the safe rule to supply the omission. I can perceive no danger in the change produced by the act. Our laws on the subject of partition have been in a state of progression. At common law, partition could only be enforced by law among parceners; and it was in that proceeding that the right of the sheriff to allot and assign had its origin. Partition by law among tenants in common and joint tenants was introduced by the statutes of Henry VIII., and as by the provisions of those statutes, partition was to be made according to the forms used in partition among parceners, the right of the sheriff to assign and allot was an incident. And one of those statutes at least, that of 31st Henry VIII., was adopted in this state; and hence the incidental right of our sheriffs to assign and allot the purparts. That statute is the root from which all our improvements have sprung. But these improvements have been gradual, as the developments of society and the complication of estates have shown their necessity and convenience. A system which rules such variety of interests and such magnitude of estates, is necessarily of slow progress in its advancement towards perfection. The legislature, in the law of 1841, lopped off the incidental excrescence of the arbitrary right of the sheriff to assign the purparts. The language of the return is, *I have allotted and assigned.* And that accords with the ancient right, although the act of 1799 would seem to imply that the inquest would have some voice in the matter. The act of 1841 leaves to the sheriff and inquest the right to divide into as many parts as in their discretion the estate will admit; the right to value those parts respectively; and if the estate will not admit of division, the right and duty of valuing the whole. It takes away a feature of irresponsible control over valuable rights of individuals by a ministerial officer, whose office is fluctuating, and not of the same dignity and responsibility which it anciently possessed,— a feature hardly reconcilable with the spirit of our laws,—and vests that power, subject to a fixed rule, in the court, whose discretion is disciplined by a knowledge of law and the rights of individuals, where all parties are publicly heard by themselves; their guardians or attorneys, and where all are placed on an equal footing, except the preference given to seniority of title. This court perceive no-

thing in the act of 1841, but a wise, just, and salutary improvement of the system. It repeals and alters nothing in the code, but what is inconsistent with the right of choice established by the act, leaving all the rest in full health and vigour. But apart from these considerations, there are settled rules in regard to the construction of statutes, which this court cannot disregard, and which may be briefly noticed. A fair and full meaning ought always to be given to the words, and their natural import allowed; unless there is something in the nature of the subject-matter, or in other parts of the statute, which necessarily restrains that meaning. The mere circumstance of a change, or a great alteration being made in the existing law, is of no moment whatever. We are not at liberty to suppose that the legislature were ignorant of the signification of the words used, nor to impute to them a culpable and negligent inattention to the subject-matter of the enactment. It was said by the Circuit Court of the United States in the case of Michael Bright, that the best means of arriving at the meaning and intention of a law is to abide by the words the law-maker has used. And as a general and safe rule of construction, it is worthy of all respect. In the case of Kerlin v. Bull, 1 Dall. 178, Chief Justice McKean says, that where the meaning is doubtful and not clear, the judges ought to interpret the statute according to what is most consonant with equity. But a shadow of doubt does not fall in this case on the meaning of the words used. The present Chief Justice says, in the case of Seidenbender v. Charles, 4 Serg. & Rawle, 151, that the generality of the enacting clause will not be restrained even by the preamble to the act, unless some particular mischief would ensue from not restraining the words. What particular mischief can result from this act of 1841, yet remains undisclosed; or what inconvenience can result to the public or to individuals whose rights are or may be concerned, by transferring from the sheriff to the court a high discretionary power, I cannot perceive. The legislature evidently knew the extent of meaning which would naturally be given to the words which they used. And when they said the act should include all cases of partition in the Common Pleas, they did not mean it should include only a few; the purview of the statute must prevail. The reason for the change existed in all cases, and is found in the general tenor and scope of all our laws. The judgment of *quod partitio fiat* is affirmed; but all subsequent proceedings, the inquisition, return of the sheriff, and approval thereof by the court, are reversed; and judgment will be entered accordingly.