## JOHN EYERMAN v. J. J. DETWILLER ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF NORTHAMPTON COUNTY.

Argued March 11, 1890—Decided October 6, 1890.
[To be reported.]

1. Under § 10, act of April 22, 1856, P. L. 534, when any of the parties
   in a partition proceeding desires to make a bid for the land, above the
   valuation, all the bids must be submitted in writing before any of them
   is announced, and the land is to be awarded forthwith to the party who
   offers the highest price above the valuation.
2. The act of 1856 does not repeal § 37, act of March 29, 1832, P. L. 201,
   nor § 14, act of May 5, 1841, P. L. 353, directing what preferences
   shall be given in the allotment of land at the appraised value in cases
   of partition, but restricts their operation to cases in which all the par-
   ties decline to offer a price above the valuation.
3. When two or more parties desire to submit a joint bid, they may do
   so, and if their bid is the highest, the land, or the purpart thereof so
   bid for, should be awarded to them jointly : the proper practice, under
   the act of 1856, in receiving bids and allotting purparts, stated : Per
   Mr. Justice STERRETT.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WIL-
LIAMS, JJ.

No. 47 January Term 1890, Sup. Ct.; court below, No. 28
August Term 1889, C. P.

On July 18, 1889, John Eyerman brought an action against
John J. Detwiller, John Knecht and Jesse Lines, for the par-
tition of a lot of ground in Easton, whereon was erected a build-
ing known as the Able Opera House, the plaintiff declaring
for the undivided one fourth of said property. On August 19,
1889, upon confession of the defendants, judgment quod par-
titio fiat was entered. Commissioners to make partition, agreed
upon by the parties and appointed by the court, made return
on September 2, 1889, that the property could not be divided,
etc., and that they had appraised the same at $60,000. There-
upon, a rule upon the parties to accept or refuse at the valua-
tion was issued, returnable on September 9th.

On the return day of the rule, the defendants claimed that

their title was older than that of the plaintiff, and that accordingly they were entitled, under § 14, act of May 5, 1841, P. L. 353, to make a bid for the property after any bid that the plaintiff might make should have been put in. The plaintiff objected, and claimed that all parties should hand in their bids before any bid was announced.

The facts respecting the title, as they were made to appear to the court, were that on December 30, 1878, by a deed bearing that date, the Merchants Bank of Easton conveyed the property in question to John Eyerman, grandfather of the plaintiff, and to the defendants, and on January 6, 1883, John Eyerman, Sr., died intestate, leaving a widow, who on March 1, 1886, released her dower in said premises, and leaving, also, the plaintiff as his only heir at law.

The court took the matter under advisement, enlarging the rule to September 16th, upon which day SCHUYLER, P. J., filed the following opinion:

The real estate in controversy is what is known as Able's Opera House, in this city. It was purchased by the defendants in connection with John Eyerman, Sr., and these four persons held title to the property as tenants in common for a number of years, when Mr. Eyerman died and his interest descended to the plaintiff. The plaintiff being unable to agree with the defendants as to the management of the property, the present writ was sued out, under which the property has been duly valued and appraised at $60,000, and the parties are now before the court to accept or refuse the same. To regulate the practice, at this stage of the proceedings, the act of April 22, 1856, § 10, P. L. 534, was passed, which provides as follows: " In all cases of partition of real estate, in any court wherein a valuation shall have been made of the whole or parts thereof, the same shall be allotted to such one or more of the parties in interest, who shall, at the return of the rule to accept or refuse to take at the valuation, offer in writing the highest price therefor above the valuation returned, but if no higher offer be made for such real estate, or any part thereof, it shall be allotted or ordered to be sold as provided by law."

This act is sufficiently clear, as far as it goes, but it is defective in not furnishing an answer to the question as to the

order in which the offers or bids are to be made, which is the sole question, limited by the facts before us, for present decision. " The purpose of the act certainly was to enable the parties to correct unfairness or under-valuation, and make the premises command the highest price : " Klohs v. Reifsnyder, 61 Pa. 244. But this same case is authority for the statement that it was not the purpose of the act to " convert the court room into an auction, where the property would rise by small bids until it had reached the highest price that interest or pertinacity could force it up to." Unless, therefore, the court should compel all parties to hand their offers in together, which, as we shall see, would, in a case circumstanced like the present, defeat the legislative intent elsewhere expressed, there must be some order in which the offers should be made ; and the question as to what order becomes an important one, since the party having the last offer has clearly the advantage.

As has been seen, the act is not confined to the Common Pleas, but applies to " all cases of partition of real estate in any court." Soon after the passage of the act, the Orphans' Court for this district inaugurated a practice, which has been adhered to ever since, of allowing the eldest son to accept the real estate at the valuation, and then if any one or more of the other heirs offers more than the appraised value, the eldest son is allowed the final bid, thus giving him a decided preference. The reason for this was and is that the legislature, by the act of March 29, 1832, § 37, P. L. 201, had declared that in the partition of real estate in the Orphans' Court the eldest son should be preferred. Our practice was brought to the attention of the Supreme Court, as appears by the appellee's paper-book, and was indirectly approved of in Bartholomew's App., 71 Pa. 292, where the court say that the act of 1856 does not interfere " with the order of choice " provided for in the act of 1832.

In the Common Pleas, however, strange as it may seem, there does not appear to be any established practice to suit a case like the present. True, in Klohs v. Reifsnyder, supra, which was a Common Pleas case, the Supreme Court say that " the true interpretation of the act of 1856 warrants only a single offer in writing, and that the court can compel all parties to hand their offers in together, or permit them to seal them up,

until the court shall order them all to be opened." But what
is here said must be understood in its application to the case
then in hand, which was a contest between parties whose titles
bore the same date, whereas [in the case at bar the title of the·
plaintiff is many years younger than that of the defendants.] [1]

The distinction is an important one, for the following reason:
Where all the titles bear the same date, in such a case it rests
in the discretion of the court to which of the parties the land
will be allotted: Dana v. Jackson, 6 Pa. 236. But where the
parties hold the real estate by titles differing in date, there it
becomes possible to apply the act of May 5, 1841, § 14, P. L.
353, which provides that " in all cases of partition in the Com-
mon Pleas, the court shall allow the holders of the titles to the
land, or parts thereof, to take the same, or parts thereof, consecu-
tively, according to the dates of their respective titles." The
significance of this act in its application to the present case lies
in the fact of the preference which it declares in favor of the
holder of the oldest title, just as the act of 1832 declares a
preference in favor of the oldest son.

In Klohs v. Reifsnyder, supra, a case decided thirteen years
after the passage of the act of 1856, the Supreme Court say
" Election by seniority and sex belongs solely to the proceeding
in the Orphans' Court. . . . . In the Common Pleas, since the
act of 5th May, 1841, preference is given to the seniority of
title ; " thus recognizing that both the preference for the oldest
son, as declared in the act of 1832, and the preference for the
holder of the oldest title, as declared in the act of 1841, must
be respected in administering the act of 1856. It is in strict
accordance with this idea, as has been seen, that the oldest son
is uniformly allowed in the Orphans' Court the privilege of
making the last bid. By the same token, the same privilege
should be extended in the Common Pleas to the holder of the
oldest title. Consistency, if nothing else, would require as
much, but we think we have no discretion in the matter.

If we are right in this, then the contention that the parties
should be compelled to hand in sealed bids has nothing to rest
upon, for that would put the parties on an equal footing and
defeat the preference which the legislature, whether wisely or
unwisely it is not for us to say, has created. Besides, in a
court of justice, the proceedings should be conducted openly,

Arguments.

except in a case of clear necessity. Where partition is sought in the Common Pleas between parties whose titles all bear the same date, secret offers might afford the only feasible mode of deciding to whom the allotment or allotments should be made, for the act of 1841 is not adapted to such a case; but where, as here, the titles bear different dates, the act applies and its mandate must be obeyed. With the supposed hardship of according to the present defendants the last bid, we have nothing to do, if we have read the legislative intent correctly, but the following extract from the opinion of THOMPSON, C. J., in Bartholomew's Appeal, supra, may not be out of place: " An heir, " and the same is equally true of any other party, " wishing any certain appraised purpart, ought to make up his or her mind and offer what he or she is willing to give for it above the appraisement, and not depend upon what others may be willing to do. By the rule established in Klohs v. Reifsnyder, this is the only mode by which such a wish may be gratified."

Thereupon the plaintiff handed in to the court a sealed bid offering to take the property at an advance of $5,000 over the valuation. The court, against the objection of the plaintiff, opened this bid and announced what it was. The defendants then made a bid in writing offering to give $5,050 above the valuation, whereupon the court decreed that the property be allotted and adjudged to the defendants at $65,050, they paying to the plaintiff, after deducting costs, the one fourth of that amount. The plaintiff, having excepted to the order of the court, then took this appeal, specifying that the court erred:

1. In making the finding in its opinion embraced in [ ] [1]

2. In permitting the defendants to make the last bid.

3. In opening and announcing the plaintiff's bid before the defendants made their bid.

4. In allotting the real estate to the defendants at their bid.

*Mr. H. D. Maxwell,* for the appellant:

It is immaterial, in our view, whether the defendants have priority of title or not, as the case is governed by § 10, act of April 22, 1856, P. L. 534; and, if the purpose of that act was, as stated by Mr. Justice AGNEW in Klohs v. Reifsnyder, 61 Pa. 240, to " correct any unfairness and under-valuation, and make

the premises command the highest price," it follows, as a nec-
essary conclusion, that the bids must in all cases be sealed or
handed in simultaneously, as this is the only method by which
that purpose can be effected. The act of 1856 limits the ap-
plication of § 37, act of March 29, 1832, P. L. 201, and § 14, act
of May 5, 1841, P. L. 353, to cases where no one desires to bid
over the valuation, but one or more of the parties desire to take
at the appraisement. When bids are made they must all be
handed in together or sealed: Scott on Intest. Law, § 87; 1
Rhone's O. C. Pr., 537. Such is the almost universal practice
throughout the commonwealth, as we have ascertained by in-
quiries. We do not admit, however, that the defendants have
priority of title. The plaintiff, coming in by descent, stands
in the place of his ancestor, and has the same rights the latter
would have if living.

*Mr. O. H. Meyers,* for the appellees :

1. Although the plaintiff has the same estate that his grand-
father had, he has a different title ; the former had a title by
purchase, and the latter has one by descent. The act of April
11, 1799, 3 Sm. L. 387, authorizes the Courts of Common Pleas,
in cases of partition, to determine to whom the lands shall be
awarded. By act of May 5, 1841, P. L. 353, the court is di-
rected to allow the parties to take consecutively, according to
the dates of their respective titles. The act of April 22, 1856,
P. L. 534, provides that the land shall be allotted to such one
or more of the parties as shall offer in writing the highest price
above the valuation. Neither of these acts repeals any prior
one. They together constitute one entire system, and are to
be construed together. The preference which the act of 1841
gives to the holder of the elder title, was therefore properly
accorded to the defendants in the bidding under the act of
1856, by permitting them to make the final offer.

2. It will be observed that the act of 1856 simply authorizes
offers in writing, without saying how and in what manner they
are to be made. The court below, therefore, had discretionary
power, under § 21, act of June 16, 1836, P. L. 787, to regulate
the practice; and, indeed it has such authority at common law,
under its general powers: Vanatta v. Anderson, 3 Binn. 417;
Snyder v. Bauchman, 8 S. & R. 335; 1 Tr. & H. Pr., 122, note.

Opinion of the Court.

The expediency of the rules of practice established by it is not a question for this court: Gannon v. Fritz, 79 Pa. 303. The mode of procedure established in Northampton county does not deprive any one of the right to make an offer in writing, which is all the statute provides for. Wherein, then, is there any violation of law, or any injustice in it? The legality and propriety of such proceeding has been acquiesced in by this court: Sutton's App., 112 Pa. 598; Klohs v. Reifsnyder, 61 Pa. 240; Bartholomew's App., 21 Pa. 291; Mason's App., 41 Pa. 74. Our mode of procedure has prevailed for a third of a century. It is the law for our judicial district, and its validity and fairness are not to be determined by different modes pursued in other districts.

OPINION, MR. JUSTICE STERRETT:

The subject of this action of partition is a lot, and building thereon, known as the Able Opera House, which was conveyed in fee by the Merchants' Bank of Easton to John Detwiller, John Knecht, Jesse Lines, and John Eyerman, Sr., as tenants in common. In 1883, Eyerman died intestate and without issue, and his undivided one fourth interest in the property descended to his grandson and only heir at law, John Eyerman, the plaintiff. Commissioners appointed by the court found that the property could not be divided, and they appraised the same at $60,000. On return of the rule to accept or refuse, etc., the defendants claimed priority of title, and insisted that under § 14, act of May 5, 1841, they were entitled to the last bid. The plaintiff objected, claiming that the proper practice, under the act of April 22, 1856, was for all the parties, who desired to offer more than the valuation, to submit their respective bids in writing to the court before any of the bids were announced; but the court held that, by reason of their priority of title, the defendants were entitled to bid last. The plaintiff then presented a sealed bid, offering $5,000 above the valuation returned by the commissioners. That bid was opened and read aloud by the court, and, notwithstanding plaintiff's objection, a bid in writing by the defendants offering to give $5,050 over the valuation was received, and thereupon the property was allotted and decreed to them, they paying to the plaintiff. after deducting costs, one fourth of $65,050, the in-

Opinion of the Court.

creased valuation. Exceptions, filed by plaintiff, to the action and final decree of the court having·been dismissed, this appeal was taken.

The controlling question presented by the specifications of error is whether a proper construction of § 10, act of April 22, 1856, does not require all bids to be submitted to the court in writing before any bid is announced. We are clearly of opinion that it does. In the Orphans' Court, the right to take at the appraisment is in the order of birth, preferring males to females: Act of March 29, 1832, § 37. In the Common Pleas, the act of April 11, 1799, directed that, "in case each of the persons interested, or more than one of them, shall be willing to take the lands and tenements at the appraised value, . . . . the court shall determine to whom they shall be conveyed." But that was changed by the act of May 5, 1841, which provides that, in the Common Pleas, "the court shall allow the holders of the title of the land, or parts thereof, to take the same, or parts thereof, consecutively, according to the dates of their respective titles, legal or equitable." Then came the act of April 22, 1856, which effected a radical change in the theretofore established practice in both courts, by providing : "In all cases of partition of real estate, in any court, wherein a valuation shall have been made of the whole, or parts thereof, the same shall be allotted to such one or more of the parties in interest who shall, at the return of the rule to accept or refuse to take at the valuation, offer in writing the highest price therefor above the valuation returned; but, if no higher offer be made for such real estate, or any part thereof, it shall be allotted or ordered to be sold as provided by law."

While the section above quoted does not repeal the acts of 1832 and 1841, it has the effect of restricting their operation to cases in which all the parties in interest decline to exercise the right of offering to take some or all of the purparts at a price above the valuation. When the parties are properly before the court, in obedience to the rule to accept or refuse, it is the first duty of the court to give each of them an opportunity of presenting one bid, in writing, for each separate purpart, in its order, if more than one, and no bid should be announced, or in any manner disclosed, until those present and desiring to do so, have handed in their bids on the purpart then being acted

Opinion of the Court.

on.   Then the bids should be opened by the court or by its di-
rection, and the purpart bidden for forthwith announced to the
party who offers therefor the highest price over the valuation.
If two or more of the parties desire to submit a joint bid, there
appears to be nothing in the act to forbid it, and, if their joint
bid is the highest, the purpart should be awarded to them jointly.
Each purpart, if there is more than one, should be taken up in
its order, and disposed of in like manner.   After all the parties,
respectively, have thus had an opportunity of making a written
offer for each purpart, and one or more purparts remain for
which no bid was offered, they should be allotted according to
the provisions of the prior acts of 1832 or 1841, as the case may
be, and, if not taken at the valuation, an order of sale may be
made.   This is an outline of the practice now almost univer-
sally recognized in our courts, and we think it accords with the
letter, as well as the spirit of the act of 1856.   All the parties,
without regard to age, sex, or seniority of title, are thus placed
on a footing of equality, so far as it is practicable to do so.
Neither can have any undue advantage of the other.   If prop-
erly conducted, the practice operates as a safeguard against
the evils of under-valuation, trickery, etc., which the act of
1856 was intended to remedy.

In Klohs v. Reifsnyder, 61 Pa. 240, Mr. Justice AGNEW, speak-
ing for this court, said : " The purpose of the act certainly was
to enable the parties to correct unfairness or under-valuation,
and make the premises command the highest price.   In this view
a second bid would be but fair.   But, on the other hand, over-
bidding leads to unfairness, and incites parties to a series of
feints in bidding, to enable one to overreach the other.   Selfish
or even malicious pertinacity may force one who must have the
property to pay more than it is worth, or greater wealth may,
for unfair purposes, bid it away from another, whose circum-
stances require him to get it.   In addition to this, such an in-
terpretation would convert the court room into an auction,
where the property would rise by small bids until it had reached
the highest price that interest or pertinacity could force it up
to.   We are of opinion, therefore, that the true interpretation
of the act of 1856 warrants only a single offer in writing, and
that the court can compel all parties to hand their offers in to-
gether, or permit them to seal them up until the court shall order
them all to be opened."

Syllabus.

While the clear and comprehensive construction of the act of 1856, in the opinion above quoted, may be broader than the decision of the question then before the court required, we have no doubt as to its entire accuracy, and think it sustains appellant's contention that preference cannot be recognized when a bid higher than the valuation is offered. The act evidently warrants only a single offer, and that must be in writing. The court should require all offers to be submitted before any of them is announced, and then the right to take belongs to the party whose offer over the valuation is the highest. The action of the court in permitting the defendants to bid, after the offer submitted by the plaintiff was publicly announced, gave them an undue advantage over him, never contemplated by the act. If they desired to bid, they should have been required to submit their offer in writing, before his was announced or they knew what his bid was.

It is unnecessary to consider other questions that were brought to our notice on the argument. In view of what has already been said, they become immaterial.

> Decree reversed at the defendants' costs, and record remitted for further proceedings in accordance with this opinion.