# L. H. WHITMAN ET UX. v. MARTIN O'CONNOR.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF VENANGO COUNTY.

Argued October 7, 1891—Decided January 4, 1892.
[To be reported.]

1. The provision in § 10, act of April 22, 1856, P. L. 534, that in all cases of partition "wherein a valuation shall have been made of the whole or parts" of the property, the same shall be allotted to the party offering the highest price above the valuation, applies, not only to cases in which a valuation has actually been made, but also to all cases wherein a valuation is required by the law to be made.
2. Under § 2, act of April 11, 1835, P. L. 200, relative to partitions in the Court of Common Pleas, it is the duty of the inquest, upon dividing the property into three purparts, there being but two parties in interest, to value each purpart. In such a case, § 14, act of May 5, 1841, P. L. 353, transferring the power to allot purparts from the sheriff and inquest to the court, has not dispensed with such valuation.

Statement of Facts.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 268 October Term 1891, Sup. Ct.; court below, No. 82 August Term 1890, C. P.

On August 11, 1890, Lemuel H. Whitman and Olive M. Whitman, his wife, in right of said Olive, brought an action against Martin O'Connor, for the partition of a tract of land in Sugarcreek township, containing about fifty acres. The plaintiffs' declaration stated the interest of Olive M. Whitman in said land to be the undivided one third, and that of the defendant to be the undivided two thirds thereof. On the return day of the writ, the defendant not appearing, the court entered judgment quod partitio fiat, and thereupon a writ de partitione facienda was issued.

On January 26, 1891, an inquisition returned by the sheriff and jurors, making a division of the premises into three unappraised purparts of sixteen acres forty-two perches each, designated as purparts A, B and C, respectively, and assigning purpart A to the plaintiff, Mrs. Whitman, and purparts B and C to the defendant, was filed in open court and confirmed nisi. On the same day, the defendant moved the court to strike off the inquisition "for reasons apparent on the face of the return," and obtained a rule to show cause, etc. The defendant filed also the following exceptions to its confirmation:

2. The sheriff and jurors have usurped the authority of the court by attempting to set apart the different purparts to the owners of the land.

3. The jury has neglected to appraise the purparts.[3]

On April 13, 1891, after argument, the court, TAYLOR, J. P., discharged the rule to strike off the inquisition; exception,[1] and entered an order dismissing the exceptions to its confirmation,[3] setting aside that part thereof purporting to assign or allot the different purparts, and confirming the inquisition as thus reformed; and granted a rule on the parties to come into court on April 27, 1891, at two o'clock, P. M., to accept or refuse said purparts; exception.

On April 27th, the defendant put on file three sealed bids, offering to take the respective purparts at the following prices, to wit: purpart A at seven hundred dollars, purpart B at four

hundred dollars, and purpart C at two hundred dollars. The same day the plaintiff, Mrs. Whitman, filed an election as holder of the oldest title, to take purpart A.

On August 24, 1891, the court made the following decree:

And now, to wit, August 24, 1891, due proof of the service of the rule on all persons interested, to come into court on the first day of April Term, A. D. 1891, and accept or refuse the purparts into which the estate has been divided, having been made, and certain sealed acceptances or elections having been filed in the prothonotary's office on the return of the said rule, which acceptances or elections were opened on the thirtieth day of April, A. D. 1891, agreeably to the practice of the court in such cases: Whereupon, it appearing that the plaintiff, Olive Marilda Whitman was the holder, in her own right, of the oldest title, and had accepted or elected in writing, filed as aforesaid, to take purpart A, as marked and described by the inquest, in a map or plot attached to and made a part of its return, the court, in consideration thereof, do allow the said purpart, to wit, purpart A being . . . . . unto the said Olive Marilda Whitman, and do adjudge and decree that the said purpart, as above described, and in the inquest and attached plot fully ·described, be and remain unto the said Olive Marilda Whitman, her heirs and assigns, firm and stable forever; and direct the sheriff of Venango county to make and execute a conveyance of the same unto said Olive Marilda Whitman, in fee-simple, upon her paying one third of the costs of the suit: And, whereupon, it further appearing that the defendant, Martin O'Connor, was the holder, in his own right, of the youngest title, and had accepted or elected in writing, filed as aforesaid, to take purparts B and C as marked and described by the inquest, in a map or plot attached to and made part of its return, the court, in consideration thereof, do allot the said purparts, to wit, purpart B being . . . . . and purpart C being . . . . . unto said Martin O'Connor, and adjudge and decree that the said purparts as above described, and in the inquest and attached plot fully described, be and remain unto the said Martin O'Connor, his heirs and assigns, firm and stable forever; and direct the sheriff of Venango county to make and execute a conveyance of the same unto the said Martin O'Connor in fee-simple, upon his paying the two thirds of the costs of this suit.

—Thereupon the defendant excepted to the foregoing decree, alleging that the court erred, inter alia:

1. In allotting purpart A to Olive A. Whitman at her election.[5]

2. In not allotting said part to defendant at his bid.[6]

3. In decreeing that defendant had elected to take purparts B and C.[7]

—The same day, said exceptions were dismissed; exception.

The defendant then took this appeal, specifying that the court erred:

1. In discharging the rule to strike off.[1]

3. In dismissing the third exception to the inquisition.[3]

5-7. In dismissing defendant's exceptions to the decree.[5 to 7]

*Mr. John O. McCalmont* (with him *Mr. S. P. McCalmont* and *Mr. Bryan H. Osborn*), for the appellant.

It is the recognized practice in this commonwealth that the purparts must be appraised: 2 Brewst. Pr., § 2020; and the plain wording of the statute regulating such proceedings requires an appraisement: § 2, act of April 11, 1853, P. L. 200, changing the practice which formerly obtained under the acts of April 11, 1799, 3 Sm. L. 386; April 7, 1807, 4 Sm. L. 400, and February 5, 1821, 7 Sm. L. 353; and still further modifying the common-law rule stated in Wetherill v. Keim, 1 W. 320. Plaintiff claims to be entitled, under § 14, act of May 5, 1841, P. L. 353, to make first choice of purparts without a bid. In case there were two equal purparts, might she make first choice of one of them? Or, if they were unequal, could she take the greater portion as her share? This is just what would follow, if her claim is correct, since the jury cannot assign the purparts: Dana v. Jackson, 6 Pa. 234. The cases relied on by the plaintiff were cases of partition in the Orphans' Court and do not apply. Even in that court, however, there must be an appraisement, when the land is not divided into as many equal parts as there are heirs: § 39, act of March 29, 1832, P. L. 202, construed in Darrah's App., 10 Pa. 210. Further, there is no allegation that these purparts are of equal value. They should have been allotted to the highest bidder, under § 10, act of April 22, 1856, P. L. 534, restraining the operation of the act of May 5, 1841, supra: Eyerman v. Detwiller, 136 Pa. 285.

*Mr. J. S. Carmichael* (with him *Mr. R. W. Dunn*), for the appellees:

1. As to the common-law practice, see: 1 Co. Litt., §§ 247–249; 2 Bl. Com., 189; Sampson's App., 4 W & S. 86; Wistar's App., 105 Pa. 390; 3 Chitty on Pl., 1395, 1396; 2 Tr. & H. Pr., § 1817. One object of the act of April 11, 1799, 3 Sm. L. 386, was to import into the action of partition the Orphans' Court practice of appraising land which could not be divided: Clawges v. Clawges, 2 M. 34; McMichael v. Skilton, 13 Pa. 215. In so far as the common law has not been altered by statute, it remains in force; and as valuation, owelty, etc., are entirely creatures of statute, the defendant must show statutory authority in support of his contention that the jury should have appraised the land in the present case: Coleman v. Coleman, 19 Pa. 100.

2. This proceeding was conducted under the act of April 7, 1807, 4 Sm. L. 400. The wording of § 1 of that act is almost identical with that of § 36, act of March 29, 1832, P. L. 201, relating to partitions in the Orphans' Court, which has been construed as providing for an allotment of purparts without appraisement: Sampson's App., 4 W. & S. 86; Wistar's App., 105 Pa. 390. The legislation is of the same character throughout: § 2, act of April 11, 1799, 3 Sm. L. 387; § 5, act of April 7, 1807, 4 Sm. L. 400, and § 2, act of April 11, 1835, P. L. 200, providing for the same contingencies in the Court of Common Pleas, as §§ 37–39, act of March 29, 1832, P. L. 201, provided for in the Orphans' Court. The reasoning of this court in Wistar's App., 105 Pa. 390, so far as relevant, is therefore applicable to this case. Moreover, the point now in question was raised in Wetherill v. Keim, 1 W. 320, which rules the present case.

3. The contention that the jury acted under the authority of § 2, act of April 11, 1835, P. L. 200, is without foundation. That act is never called into play until after the inquest have determined that an equal partition cannot be made. The defendant cannot complain of the action of the jury, as he does not allege irregularity, misbehavior, mistake, fraud or imposition: Kreider's Est., 18 Pa. 374; and the sheriff's return is conclusive between the parties and cannot be contradicted: Co. Litt., § 257; Denning's Est., 20 W. N. 391. We contend

that no appraisement should be made, and that the parts should be allotted, as was done, under § 14, act of May 5, 1841, P. L. 353. This act applies to all cases in partition, transferring from the sheriff to the court the assignment of purparts according to the dates of the respective titles: Dana v. Jackson, 6 Pa. 234. Section 10, act of April 22, 1856, P. L. 534, applies only where an appraisement has been made; and no authority of law for the filing of defendant's bids exists.

OPINION, MR. JUSTICE GREEN:

The plaintiff in this action of partition is the owner of one undivided third part of the land in question, and the defendant is the owner of the remaining two thirds. The inquest divided the land into three purparts of exactly the same size each, but did not value any of them; and they also allotted one purpart to the plaintiff, and two purparts to the defendant. The inquisition was returned to court on January 26, 1891, and the same day exceptions were filed, and a motion was made by defendant to strike off the inquisition. On April 13, 1891, the rule was discharged, but the court set aside the allotment made by the inquest, and granted a rule on all the parties to appear on the twenty-seventh of April, to accept or refuse the purparts. On the twenty-seventh, the parties appeared, and the plaintiff filed a sealed election to accept purpart A, as set out in the inquisition, and the defendant filed sealed bids offering to accept purpart A at seven hundred dollars, purpart B at four hundred dollars, and purpart C at two hundred dollars. On August 24, 1891, the court entered a decree allotting purpart A to the plaintiff, and purparts B and C to the defendant, disregarding the defendant's bids, and taking no action in reference to them. From this decree the defendant appealed to this court, and the principal contention is that the inquisition was illegal because no valuation of the purparts was made. Errors are assigned also to the allotment of purpart A to the plaintiff, and to the refusal of the court to allot purpart A to the defendant on his bid.

The chief question is on the omission of the inquest to value the purparts. In the return of the inquest nothing whatever is said as to the value of the purparts. They simply say that the property can be divided by giving purpart A to the plaint-

iff, and purparts B and C to the defendant, and that this will make an equal division of the tract of land. As that means only an equal division of the land into three pieces of the same size, we cannot know whether the three pieces were of equal value in money, and there is nothing on the record to show what the relative value of the purparts was. The defendant's bid for purpart A was more than for the two other purparts combined; and if this can be regarded as a fair estimate of the value of all, it follows that the plaintiff, although the owner of but one third of the property, has obtained, by the decree of the court, more than one half of the value of the tract. This seems to be an unjust result, and we must consider whether the mode in which it has been accomplished is in accordance with the law.

It will be observed that, although there are three purparts, there are but two owners. Strictly, therefore, the land has not been divided into as many purparts as there are owners; and as the inquest did not value either the whole of the land, or any of the purparts, the court below could not know whether they were giving more value to one than to the other.

It is very plain that if this proceeding were in the Orphans' Court, the inquest would have been obliged to make a valuation of the purparts, under the thirty-ninth section of the act of March 29, 1832, P. L. 202. That section directs that, when the estate cannot conveniently be divided into as many shares as there are parties entitled, the inquest shall appraise the respective purparts into which they may divide the estate. By the fifth section of the act of April 7, 1807, 4 Sm. L. 400, it was provided that, where equal partition in value could not be made of any share or purpart, the inquest should have power to equalize the purparts by valuing them respectively, and to award that any share or shares should be subject to the payment of such sum of money as should be equal to the difference in value of any other share or purpart. By § 2, act of April 11, 1835, P. L. 200, it was provided generally that, in executing the writ of partition, the sheriff and inquest shall have power to divide the property into such number of purparts as shall appear to them most convenient and advantageous, without regard to the number of parties in interest, and to value each purpart. We cannot doubt that, under this act, which applies

to all partition proceedings in the Common Pleas, it was the plain duty of the inquest in this case, having made partition into three purparts, there being but two parties in interest, to value each of the purparts.

In the case of Dana v. Jackson, 6 Pa. 234, we held that § 14, act of May 5, 1841, P. L. 353, was intended to transfer from the sheriff and inquest to the Court of Common Pleas the power to allot the purparts to the parties entitled. It allowed a preference of choice according to the dates of the titles, but made no declaration or provision on the subject of valuation; and consequently, on that subject the act of 1835 still remained in force. From what was said by COULTER, J., in the opinion in Dana v. Jackson, it is clear that valuation was assumed to be one of the duties of the inquest. He said: " The act of 1841 leaves to the sheriff and inquest the right to divide into as many parts as in their discretion the estate will admit; the right to value those parts respectively; and, if the estate will not admit of division, the right and duty of valuing the whole."

In respect to the right of bidding, § 10, act of April 22, 1856, P. L. 534, provides " that in all cases of partition of real estate in any court, wherein a valuation shall have been made of the whole or parts thereof, the same shall be allotted to such one or more of the parties in interest, who shall, at the return of the rule to accept or refuse to take at the valuation, offer in writing the highest price therefor above the valuation returned; but, if no higher offer be made for such real estate, or any part thereof, it shall be allotted or ordered to be sold, as provided by law." As a matter of course this act applies, not only to such cases as those in which a valuation has been made, but also to all cases in which a valuation should be made in accordance with the requirements of the law. The act of 1835 required such a valuation in this case; and, if it had been made, the right of either or both of the parties to file written bids would have been without question. In determining the practice under this act we held, in Eyerman v. Detwiller, 136 Pa. 285, that all the bids must be submitted in writing to the court before any of them is announced, and the land shall be forthwith awarded to the party who offers the highest price above the valuation. That this is the fair and just method of settling any differences of opinion as to the justice and equality

of the valuation, is plainly shown in the opinion of our Brother STERRETT in this case. We are of opinion that the decree must be reversed for want of valuation by the inquest.

> Decree reversed, at the cost of the plaintiff, and the inquest and all subsequent proceedings set aside.